810 P.2d 1223
**Ron SWAFFORD, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 18974.**

Supreme Court of New Mexico.

May 1, 1991.

Robert Jacobs, Taos, for petitioner.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

RANSOM, Justice.

Ron Swafford was convicted in the district court on one count of third-degree criminal sexual penetration, NMSA 1978, Section 30–9–11(C) (Repl.Pamp.1984), one count of incest, NMSA 1978, Section 30–10–3 (Repl.Pamp.1984), one count of aggravated assault with intent to commit a felony, NMSA 1978, Section 30–3–3 (Repl. Pamp.1984), and one count of false imprisonment. NMSA 1978, Section 30–4–3 (Repl.Pamp.1984). Following an unsuccessful appeal, *Swafford v. State*, 109 N.M. 132, 782 P.2d 385 (Ct.App.), *cert. denied*, 109 N.M. 54, 781 P.2d 782 (1989), Swafford filed a pro se petition for post-conviction relief pursuant to SCRA 1986, 5–802. The motion was summarily dismissed by the district court. We granted certiorari under SCRA 1986, 12–501 to address important constitutional questions.[1]

Swafford argues that (1) his conviction and sentence for assault with intent to commit a felony merged with criminal sexual penetration, and (2) it was error for the trial court to aggravate sentences based on Swafford's blood relationship to the victim and on lack of remorse. He also asks us to revisit whether separate consecutive sentences for incest and criminal sexual pen-

etration violate the double jeopardy prohibition against multiple punishments. The central question we address today is under what circumstances a criminal defendant can be charged, tried, and convicted of multiple statutory offenses in a single trial without running afoul of the double jeopardy clause.[2]

*Essential Facts.* On June 5, 1987, the half sister of Ron Swafford arrived for a short visit in Clovis, New Mexico. She stayed with Swafford's parents, and on June 7 she and Swafford spent the evening at home drinking. She went to bed at approximately 3:30 a.m. and was awakened by Swafford pulling on a rope he had tied around her wrist. Frightened and confused, she asked Swafford what he was doing. He responded violently, striking and choking her several times as she attempted to repel his attack. He succeeded in subduing her and then tied her arms and legs to the bed. According to the victim, Swafford then threatened her, stating "he would do everything to her that he always wanted to do to a girl that was tied up." He was charged with having inserted a candle, and then his penis, into her vagina.

On August 2, 1988, the jury acquitted Swafford on one count of third-degree criminal sexual penetration, relating to penetration with the candle, but found him guilty on all other counts as above described. He was sentenced to terms of four years each on the third-degree criminal sexual penetration, incest, and aggravated assault charges, and to two years on the false imprisonment charge. The court ordered the terms to run consecutively, for a total sentence of fourteen years.

---

**1.** Although the issues presented in Swafford's petition for post-conviction relief appear to have been raised for the first time in this collateral proceeding, we nevertheless granted certiorari to consider the questions implicated by the allegedly unconstitutional sentences. We are reluctant to issue certiorari on issues that could have been, but were not, raised on direct appeal, even where the issues raise important constitutional rights. *State v. Gillihan*, 86 N.M. 439, 524 P.2d 1335 (1974). However, sentences the court is without legislative authorization to impose well may implicate the power of the court to have so acted. It is for this fundamental rea-

son, coupled with the important constitutional questions raised, that we granted certiorari in this case.

**2.** The multiple punishment prohibition reaches not just cumulative sentences for the same offense, but multiple convictions for the same offense as well. *See State v. Pierce*, 110 N.M. 76, 86–87, 792 P.2d 408, 418–19 (1990) (where the legislature has not authorized multiple punishments for the same offense, the state may charge separate offenses, but the convictions cannot stand).

Swafford first contends that separate, consecutive sentences for third-degree criminal sexual penetration and incest are violative of the double jeopardy protection against multiple punishments for the same offense. In particular, Swafford urges that because the rape and incest arose out of the same act of sexual intercourse each offense necessarily includes the other and his convictions must merge for sentencing. We disagree, and we take this opportunity to make clear the applicable fifth amendment test for analyzing claims of multiple punishments.

*Multiple punishments.* The double jeopardy clause of the fifth amendment, made applicable to the states by the fourteenth amendment due process clause, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.[3] In an oft-repeated passage, the Supreme Court stated a tripartite model of the double jeopardy clause:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). In *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Court recently differentiated the analysis applicable to multiple punishment cases from that applicable to successive prosecutions. Successive prosecutions, whether following acquittal or conviction, implicate double jeopardy values beyond those inherent in multiple punishment cases:

> "The underlying idea, one that is deeply ingrained in at least the Anglo–American

system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity...."

Multiple prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the same offenses charged.

*Id.* at 518, 110 S.Ct. at 2091–92 (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). These concerns in the multiple prosecution context led the Court to adopt a heightened inquiry. *Id.* at 515–524, 110 S.Ct. at 2090–95.

On the other hand, the criminal defendant facing multiple convictions and punishments in the same trial possesses limited expectations. According to the Court, his sole concern is the possibility of an enhanced sentence. *Id.* at 518, 110 S.Ct. at 2091. The Court stated, "[I]n [the multiple punishment] context, 'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Id.* at 516–517, 110 S.Ct. at 2091 (quoting *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)). In that context, the Court has employed as a "rule of statutory construction" the traditional *Blockburger* test for legislative intent, as articulated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), focusing upon the elements of the statutes at issue. *Corbin,* 495 U.S. at 516, 110 S.Ct. at 2091.

■ *—Federal multiple punishment doctrine.* The pivotal question in multiple punishment cases is whether the defendant

---

**3.** Throughout this case Swafford has used the term "double jeopardy" without specifically referring to either the federal or state double jeopardy clauses. Although we believe a simple claim of "double jeopardy" is sufficient to trigger both the federal and state guarantees, nonetheless we find no suggestion in the briefs of counsel nor in the reported New Mexico case

law that the New Mexico double jeopardy clause, in the multiple punishment context, provides further protection than that afforded by the federal clause as interpreted by relevant federal case law. Accordingly, we address Swafford's claim under federal multiple punishment doctrine.

is being punished twice for the *same offense*. That question, however, has different facets. First are the unit of prosecution cases. In those cases the defendant has been charged with multiple violations of a single statute based on a single course of conduct. The relevant inquiry in those cases is whether the legislature intended punishment for the entire course of conduct or for each discrete act. *See, e.g., Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915) (upholding six convictions of defendant based upon defendant's cutting into six mail bags in a single transaction because Congress intended punishment for each act of damage to a mail bag). Later cases have established a presumption of lenity that, absent an express indication to the contrary, the legislature did not intend to fragment a course of conduct into separate offenses. *See Bell v. United States*, 349 U.S. 81, 82–83, 75 S.Ct. 620, 621–22, 99 L.Ed. 905 (1955) ("When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."). New Mexico courts have followed that approach. *See Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991) (criminal sexual penetration); *State v. Edwards*, 102 N.M. 413, 696 P.2d 1006 (Ct.App.1984) (practicing law without a license).

■ Second are the double-description cases with which we are concerned today. In those cases, the defendant is charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes. The Supreme Court has fashioned a double jeopardy analysis in which the polestar guiding courts is the legislature's intent to authorize multiple punishments for the same offense. Much of the uncertainty concerning the Supreme Court's analysis of multiple punishment questions concerns the relative importance the component parts of the analysis enjoy and in some instances the proper subject of each component part.

■ *—The Blockburger inquiry.* The *Blockburger* test, or the elements test, formulated most clearly in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), provides that:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact the other does not.

While there was at first some uncertainty about the proper scope of the *Blockburger* inquiry, later cases clearly have stated that the proper inquiry focuses upon the elements of the statutes in question—the evidence and proof offered at trial are immaterial. *See, e.g., Corbin*, 495 U.S. at 521 n. 12, 110 S.Ct. at 2093 n. 12 (*Blockburger* test has nothing to do with the evidence presented at trial).[4]

---

4. *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), is often cited as an example of departure from the strict elements application of *Blockburger*. In *Whalen*, the Court first faced the multiple punishment problem in the context of a compound statute and predicate offense. The defendant was convicted of murder perpetrated in the course of rape. The felony murder statute at issue listed several predicate felonies of which rape was but one. Thus, had the Court applied the *Blockburger* test to the rape statute and the entire felony murder statute, it would have been led to the conclusion that rape and felony murder each require proof of a fact that the other does not. Proof of felony murder need not necessarily require proof of rape—robbery, arson, housebreaking while armed, or mayhem also would suffice as predicate offenses. The majority in *Whalen*, however, applied the *Blockburger* test only to that portion of the statute incorporating rape as a predicate offense—effectively treating the felony murder statute as six distinct murder statutes, each with its own predicate offense. The result of that construction was that rape was a lesser included offense of felony murder. Justice Rehnquist accused the majority of distorting the *Blockburger* test by incorporating a fact-dependent analysis. It is clear, however, that the Court did not apply the *Blockburger* test to the evidence adduced at trial, rather the Court focused only upon that provision of the statute under which the defendant was charged in the indictment. Read in context, the majority's approach in *Whalen* perhaps may be understood as an exception to traditional analysis designed to cope more effectively with the complicated problem of compound and predicate offenses. *See also Pandelli v. United States*, 635 F.2d 533, 537 (6th Cir.1980) ("[A] criminal statute written in the alternative creates separate offenses for each alternative and should there-

—*The role of legislative intent.* While early manifestations of the *Blockburger* test indicated that the test well may have been a constitutional test for determining the sameness of two offenses, later decisions by the Court have retreated substantially from that position. Beginning with *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) (examining legislative history of Federal Bank Robbery Act for indicia of intent to permit multiple punishment), the Court repeatedly has stated that the question of whether punishments are unconstitutionally multiple depends on whether the legislature has authorized multiple punishment. *See, e.g., Whalen v. United States*, 445 U.S. 684, 688–89, 100 S.Ct. 1432, 1435–36, 63 L.Ed.2d 715 (1980). Indeed, where the legislature has explicitly authorized multiple punishment the judicial inquiry is at an end, multiple punishment is authorized and proper, and the *Blockburger* test is irrelevant. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).

The necessary corollary to the focus on legislative intent is that the *Blockburger* test is not a constitutional rule, but merely a canon of construction used to guide courts in deciphering legislative intent. *Whalen*, 445 U.S. at 691, 100 S.Ct. at 1437 (*Blockburger* is a rule of statutory construction). The rationale underlying the *Blockburger* test is that if each statute requires an element of proof not required by the other, it may be inferred that the legislature intended to authorize separate application of each statute. Conversely, if proving violation of one statute always proves a violation of another (one statute is a lesser included offense of another, *i.e.*, it shares all of its elements with another), then it would appear the legislature was creating alternative bases for prosecution, but only a single offense.

fore be treated for double jeopardy purposes as separate statutes would.").

**5.** Justice Rehnquist has suggested that the *Blockburger* test "could be viewed as nothing but a rough proxy for such analysis, since, by asking whether two separate statutes each include an element the other does not, a court is really asking whether the legislature manifested an intention to serve two different interests in

Yet another canon of construction occasionally employed by the Court identifies the social evils sought to be addressed by each offense. *See, e.g., United States v. Woodward*, 469 U.S. 105, 109, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985) (currency reporting and false statement statutes directed to separate evils); *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981) (separate statutes proscribing conspiracy to import and to distribute marijuana are directed to separate evils). This method assumes the legislature would intend statutes to apply separately only if each statute prohibits a distinct evil.[5] Finally, the Court has looked to the language, structure, and legislative history of statutes to divine legislative intent. *Garrett v. United States*, 471 U.S. 773, 779–86, 105 S.Ct. 2407, 2411–15, 85 L.Ed.2d 764 (1985) (language, structure, and legislative history of the Comprehensive Drug Abuse Prevention and Control Act of 1970 show that Congress intended a continuing criminal enterprise offense to be a separate offense punishable in addition to the predicate offenses).

—*The rule of lenity.* The rule of lenity, first announced by the Supreme Court in connection with single-statute unit of prosecution cases, raises a presumption against multiplying offenses:

When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.

*Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).

enacting the two statutes." *Whalen*, 445 U.S. at 713–14, 100 S.Ct. at 1449 (Rehnquist, J., dissenting). While the *Blockburger* test may implicate some of the same concerns as a separate evils analysis, as we hold below, we think separate analysis of the social evils proscribed by different statutes is necessary to a clear understanding of legislative intent.

While application of the rule of lenity to single-statute unit of prosecution cases is well established, *see, e.g., Ladner v. United States*, 358 U.S. 169, 177, 79 S.Ct. 209, 213, 3 L.Ed.2d 199 (1958) (where two charges are brought based upon injuries to two persons caused by single discharge of gun, Court applies rule of lenity where congressional intent unclear), application of the rule to double definition cases has been spotty. The Court paradoxically appears willing to invoke a presumption of lenity only under circumstances in which the statutes at issue, their legislative history, and their structure raise an implicit indication of lenity. *Compare Jeffers v. United States*, 432 U.S. 137, 156, 97 S.Ct. 2207, 2219, 53 L.Ed.2d 168 (1977) (presumption of lenity arises after examination of legislative history and structure of statutes reveals an unrebutted indication of lenity) *and Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) (same) *with Gore v. United States*, 357 U.S. 386, 391, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958) (Congress has manifested an attitude of harshness, not lenity). Thus, according to the Court, the presumption of lenity does not arise as a presupposition of the constitutional proscription of multiple punishment in a single trial, but instead arises only after the language, structure, and legislative history of the statutes at issue raise an indication of leniency.

*—New Mexico multiple punishment theory.* New Mexico multiple punishment theory is marked by a profusion of terms and tests—each with its own formulaic approach—purportedly serving different double jeopardy or policy interests. Perhaps more importantly, courts of this state have failed to distinguish between successive prosecution and multiple punishment cases. The result has been doctrinal confusion and occasionally inconsistent results. The cases roughly can be categorized by the tests employed.

*—The "same evidence" test.* New Mexico double jeopardy theory has its genesis both in the common law and in the constitutional provision. In *Owens v. Abram*, 58 N.M. 682, 274 P.2d 630 (1954), *cert. denied*, 348 U.S. 917, 75 S.Ct. 300, 99 L.Ed. 719 (1955), this Court established a test for determining whether the New Mexico double jeopardy clause bars a second prosecution on a related statutory offense. As stated by the Court, "the test is whether the facts offered in support of one [offense] would sustain a conviction of the other. If either information requires the proof of facts to support a conviction which the other does not, the offenses are not the same and a plea of double jeopardy is unavailing." *Id.* at 684, 274 P.2d at 631–32. The Court explained, "'With respect to double jeopardy, it is essential, under common law and various constitutional provisions declaratory thereof, that the second prosecution be for the same act and crime both in law and fact for which the first prosecution was instituted....'" *Id.* (quoting *In re Santillanes*, 47 N.M. 140, 153, 138 P.2d 503, 511 (1943)).

Perhaps because of the ambiguity in the Court's statement of the test, *i.e.*, whether the inquiry focuses upon the evidence adduced at trial, or upon the statutory elements alone, the same evidence test has been applied differently by the courts. *Compare State v. Tanton*, 88 N.M. 333, 335, 540 P.2d 813, 815 (1975) (comparison of facts offered at trial in support of convictions) *with State v. Stephens*, 93 N.M. 458, 463, 601 P.2d 428, 433 (1979) (comparison of elements). Adding to the uncertainty is the wholesale application of the same evidence test to multiple punishment cases, without explanation, despite the same evidence test having been adopted by *Abram* in the context of successive prosecution cases. *See, e.g., Stephens*, 93 N.M. at 458, 601 P.2d at 433 (multiple convictions and punishments under two statutes); *State v. Smith*, 94 N.M. 379, 380–81, 610 P.2d 1208, 1209–10 (1980) (multiple convictions and punishments under single statute).

*—The necessarily involved test.* In *State v. Quintana*, 69 N.M. 51, 364 P.2d 120 (1961), this Court first addressed the multiple punishment question. In that case the defendant was convicted in the same trial of armed robbery and grand larceny arising out of a single criminal episode. The Court vacated the grand larceny sen-

tence concluding that under the evidence adduced at trial the double jeopardy clause of the New Mexico Constitution required merger of the sentence for grand larceny and the armed robbery sentence. With no explanation of the analysis involved, the Court articulated the test as "'whether one crime *necessarily involves* another.'" *Id.* at 58, 364 P.2d at 124 (quoting *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 104, 21 A.2d 920, 921 (1941)). The Court stated that the offenses merged because "[t]he offenses arose out of the same transaction, were committed at the same time, and were part of a single criminal act." *Id.* at 59, 364 P.2d at 125. The concluding statement strongly hinted that the analysis was focused on the defendant's conduct rather than the elements of the statutes.[6] *See, e.g., State v. Blackwell*, 76 N.M. 445, 415 P.2d 563 (1966) (rape and assault with intent to rape merged because both charges arose out of the same criminal transaction, were committed at the same time as part of a continuous act, and were inspired by the same criminal intent).

The focus of the necessarily involved test was redirected six years later in *State v. McAfee*, 78 N.M. 108, 428 P.2d 647 (1967), from a factual inquiry into the defendant's conduct to an abstract examination of the statutory elements. The defendant was convicted of one count each of burglary and larceny arising out of a jewelry store break-in. Stating that the appropriate test was whether burglary necessarily involved larceny, the Court affirmed the convictions. Nevertheless, the Court did not examine the defendant's conduct, but instead examined the statutory elements of burglary and larceny and concluded that since stealing, a necessary element of larceny, was not an element of burglary, the convictions did not merge. *Id.* at 111, 428 P.2d at 650; *see also State v. Sandoval*, 90 N.M. 260, 263, 561 P.2d 1353, 1355 (Ct.App.1977) (aggravated battery conviction not merged with armed robbery conviction after comparison of statutory elements under necessarily involved test). Cast as an examination of the statutory elements in the abstract, the necessarily involved test is equivalent to the same evidence test as interpreted by *Stephens*.

■ *—The necessarily included test.* In *State v. Medina*, 87 N.M. 394, 534 P.2d 486 (Ct.App.1975), the defendant was convicted of possession of marijuana in magistrate court and later was charged with and convicted of distribution in the district court. The convictions grew out of the same events. The defendant argued that the second conviction was barred by the New Mexico double jeopardy clause because possession was a lesser included offense of distribution. *Id.* at 395, 534 P.2d at 487. The court reversed the second conviction and set forth the test for determining whether an offense is a lesser included offense of another:

For a lesser offense to be included within the greater offense, it must be 'necessarily included.' For the lesser offense to be 'necessarily included', the greater offense cannot be committed without also

---

6. The conclusion is remarkable because of the authority upon which the Court relied. First, the passage quoted from *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A.2d 920 (1941), curiously is incomplete. It does not include the Pennsylvania court's description of the methodology of the necessarily included test. Rather, the quoted portion is excerpted from the court's rejection of the defendant's argument that his acts were part of a single transaction. The court expressly limited the same transaction test to cases in which a single act has occurred. In *Moszczynski*, the court went on to describe the necessarily included test as a version of the elements test, applicable to instances involving more than a single act: "Whether a single act or series of acts constitutes two or more separate offenses is deter-

mined by whether each offense requires proof of facts additional to those involved in the other." *Id.* at 106, 21 A.2d at 922. Thus, the test established by *Moszczynski* does not examine the defendant's conduct, but focuses instead on the elements of the statutes and asks whether one offense can be committed without necessarily committing the other. *Id.* at 105, 21 A.2d at 921. Second, *Moszczynski* was premised on the common-law merger doctrine, not on double jeopardy principles. While merger and double jeopardy are in many ways related, many jurisdictions treat the doctrines distinctly. *Compare Commonwealth v. Williams*, 344 Pa.Super. 108, 496 A.2d 31 (1985) (treating merger and double jeopardy questions separately) *with State v. Vladovic*, 99 Wash.2d 413, 662 P.2d 853 (1983) (merger coextensive with double jeopardy).

committing the lesser. In determining whether an offense is necessarily included, we look to the offense charged in the indictment.

*Id.; see also State v. Kraul,* 90 N.M. 314, 563 P.2d 108 (Ct.App.) (applying test to propriety of lesser included offense instruction), *cert. denied,* 90 N.M. 637, 567 P.2d 486 (1977). The necessarily included test is best understood as a subset of the same evidence and necessarily involved tests, rather than as a distinct test. An offense is a true lesser included offense of another if its elements are completely subsumed by another, greater offense. That result follows not from a separate inquiry but from the same analysis of the statutory elements propounded by the same evidence or necessarily included tests. An offense is a lesser included offense of the greater, and, thus, the same offense for double jeopardy purposes (absent a strong legislative indication to the contrary), when comparison of the elements reveals that the elements of one offense are completely subsumed by the other.

■ *—The DeMary test.* In *State v. De-Mary,* 99 N.M. 177, 655 P.2d 1021 (1982), this Court established a hybrid test focusing on the statutory elements in light of the evidence produced at trial to determine the propriety of instructing the jury on a lesser included offense. *DeMary* did not involve the constitutional question of the double jeopardy limitations on multiple punishment. Rather, in response to a different legal problem, the Court simply employed a descriptive term shared in common with double jeopardy jurisprudence. The lesser included offense concept, as applied to jury verdict alternatives, addresses the common-law right of defendants to a jury instruction giving the jury an opportunity to find defendants guilty of an offense lesser in severity of punishment than that with which they were charged. *See* SCRA 1986, 5–611 (jury may, if so instructed, convict of lesser offense); *State v. Duran,* 80 N.M. 406, 456 P.2d 880 (Ct.App.1969) (if there is some evidence tending to establish the lesser offense, the defendant is entitled to an instruction on the lesser offense); *see also Schmuck v. United States,* 489 U.S.

705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (adopting a strict elements test for determining the propriety of a lesser included offense instruction). The *DeMary* test bears only tangential relation to the double jeopardy question concerning the propriety of multiple punishment. Rather than to aid in discerning legislative intent to punish cumulatively, the *DeMary* test implements the right of an accused to a lesser offense instruction based on the evidence adduced at trial and the elements of the lesser offense. The evidence adduced at trial has little to do with the central question in multiple punishment cases of the legislature's intent to authorize multiple punishment. Accordingly, we disagree with application of the *DeMary* test in the multiple punishment context and confine that test to determining the propriety of jury verdict alternatives.

*—Relationship between constitutional multiple punishment theory and the common-law doctrine of merger.* Merger is a common-law doctrine predating the double jeopardy clause. *Commonwealth v. Williams,* 344 Pa.Super. 108, 146, 496 A.2d 31, 51 (1985) (Spaeth, J., concurring). At common law, two offenses were said to merge for sentencing if the underlying offenses were sufficiently the same. *Id.* at 123, 496 A.2d at 39 (discussing various tests for determining whether two offenses merge for sentencing); *see also* Comment, *Double Jeopardy and Pennsylvania's Merger Doctrine,* 62 Temp.L.Q. 663 (1989) (same). If two offenses merge at common law, unlike constitutional double jeopardy, the convictions remain, but the court may sentence the defendant on only the more severe offense. *Commonwealth v. Boerner,* 281 Pa.Super. 505, 518, 422 A.2d 583, 590 (1980). The doctrine of merger has developed along different lines in different jurisdictions. While the Pennsylvania merger doctrine examines the facts and evidence in addition to the elements of the offenses and, thus, may afford broader protection than the double jeopardy clause's prohibition against multiple punishments, *Williams,* 344 Pa.Super. at 124, 496 A.2d at 40, in Washington the doctrine

appears coextensive with federal multiple punishment analysis. *State v. Vladovic,* 99 Wash.2d 413, 416–17, 662 P.2d 853, 856–57 (1983). In either case, common-law merger, like federal multiple punishment analysis, focuses upon the legislature's intent to authorize cumulative punishment. *Williams,* 344 Pa.Super. at 126, 496 A.2d at 41; *Vladovic,* 99 Wash.2d at 416, 662 P.2d at 856.

█ New Mexico courts have discussed merger only in the context of constitutional double jeopardy. *E.g., State v. Pierce,* 110 N.M. 76, 87, 792 P.2d 408, 419 (1990) (where offenses merge, double jeopardy clause precludes punishing defendant more than once). New Mexico courts have not adopted the common-law merger doctrine, and we are not persuaded to do so here today. At this juncture, we are of the opinion that use of the merger doctrine adds to the multiple punishment analysis nothing other than a second level to what is already a complicated analysis.

█ *Stating the test.* Taking as our cue the repeated admonitions of the Supreme Court that the sole limitation on multiple punishments is legislative intent, *Grady v. Corbin,* 495 U.S. at 518, 110 S.Ct. at 2091; *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983), we adopt today a two-part test for determining legislative intent to punish. The first part of our inquiry asks the question that Supreme Court precedents assume to be true: whether the conduct underlying the offenses is unitary, *i.e.,* whether the same conduct violates both statutes. The second part focuses on the statutes at issue to determine whether the legislature intended to create separately punishable offenses. Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial.

█ The first part of our inquiry arises from the pragmatic observation that the double jeopardy clause clearly cannot operate to prohibit prosecution, conviction, and punishment in a single trial for discrete acts violative of the same statute (whether actually the same, or the same under the second part of our analysis). *See* Thomas, *A Unified Theory of Multiple Punishment,* 47 U.Pitt.L.Rev. 1, 12–25 (1985) (noting that the multiple punishment question necessarily involves two component issues: whether the conduct was unitary—the factual question—and whether the statutes proscribe the same offense); *Morgan v. Devine,* 237 U.S. 632, 640, 35 S.Ct. 712, 714, 59 L.Ed. 1153 (1915) (concluding that burglary of a post office and larceny of a post office were separate offenses because separate acts were committed with the requisite criminal intent and Congress had decided to punish both acts). In this first part of our analysis, we address the question that federal precedent has assumed to be true. *See, e.g., Blockburger,* 284 U.S. at 299, 52 S.Ct. at 180 (after stating that it was a single sale of narcotics that triggered prosecution for two statutory offenses Court reaches the statutory question); *Whalen,* 445 U.S. at 684, 100 S.Ct. at 715 (before addressing question of legislative intent to authorize multiple punishment, Court notes that rape and murder occurred in "single criminal episode"). Clearly, if the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense. Thus, for example, the double jeopardy clause does not bar separate convictions and sentences for two thefts from the same victim committed on separate days, even though the statutory offenses are identical. The double jeopardy clause bars conviction and punishment only for the same statutory offense based upon unitary conduct.

The conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial. The case law is replete with failed attempts at judicial definitions of the same factual event. Nonetheless, we must endeavor to provide several guiding principles.

If two events are sufficiently separated by either time or space (in the sense of physical distance between the places where

the acts occurred), then it is a fairly simple task to distinguish the acts. Time and space considerations, however, cannot resolve every case and resort must be had to the quality and nature of the acts or to the objects and results involved. *See Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991) (describing factors determinative of whether separate and distinct acts of criminal sexual penetration have occurred). Under the first part of the analysis, it must be kept in mind that the task is merely to determine whether the conduct for which there are multiple charges is discrete (unitary) or distinguishable. If it reasonably can be said that the conduct is unitary, then one must move to the second part of the inquiry. Otherwise, if the conduct is separate and distinct, inquiry is at an end.

■ New Mexico courts have grappled with the unitary conduct question primarily in cases implicating criminal sexual penetration, NMSA 1978, Section 30–9–11 (Repl.Pamp.1984), and kidnapping, Section 30–4–1 (Repl.Pamp.1984), or false imprisonment, Section 30–4–3 (Repl.Pamp.1984). *See, e.g., State v. McGuire*, 110 N.M. 304, 795 P.2d 996 (1990) (criminal sexual penetration and kidnapping); *State v. Corneau*, 109 N.M. 81, 781 P.2d 1159 (Ct.App. 1989) (criminal sexual penetration and false imprisonment). In those cases, the courts admittedly did not follow the precise analytic framework we establish today, but they nonetheless understood the fundamental problem that similar statutory provisions sharing certain elements may support separate convictions and punishments where examination of the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses. *McGuire*, 110 N.M. at 309, 795 P.2d at 1001.

■ The second part of our inquiry asks whether the legislature intended multiple punishments for unitary conduct. If the legislature expressly provides for multiple punishments, the double jeopardy inquiry must cease. *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679. Absent a clear expression of legislative intent, a court first must apply the *Blockburger* test to the elements of each statute. If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both.

■ Conversely, if the elements of the statutes are not subsumed one within the other, then the *Blockburger* test raises only a presumption that the statutes punish distinct offenses. That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent. Here, we must turn to traditional means of determining legislative intent: the language, history, and subject of the statutes. In this context we can provide several guiding, but by no means exclusive, principles for divining legislative intent.

■ Statutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments. The court must identify the particular evil sought to be addressed by each offense. If several statutes are not only usually violated together, but also seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution. *See, e.g., State v. Hargrove*, 108 N.M. 233, 238, 771 P.2d 166, 171 (1989) (consideration of different policy objectives in context of criminal sexual penetration and incest based on single acts of intercourse). We caution, however, that care must be taken in describing the evils sought to be prevented—social evils can be elusive and subject to diverse interpretation.[7] According-

---

7. The instant case aptly illustrates the potentially elusive nature of the social evils test. Both rape and incest broadly can be understood as protecting society against a single evil—aberrant sexual behavior. That construction would raise a strong presumption that the legislature intend-ed but one conviction and sentence for a single episode implicating both offenses. Nevertheless, such broad interpretation eviscerates the legislature's intent to proscribe the narrower, distinct evils (described in the body of this opin-

ly, the social evils proscribed by different statutes must be construed narrowly, bearing in mind the other canons of construction described below.

The quantum of punishment also is probative of legislative intent to punish. Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes. If the punishment attached to an offense is enhanced to allow for kindred crimes, these related offenses may be presumed to be punished as a single offense. *See, e.g., People v. Robideau,* 419 Mich. 458, 470, 355 N.W.2d 592, 604 (1984).

Unless an intent to punish separately can be found through application of the canons of construction set forth above, lenity is indicated and, in that event, it is to be presumed the legislature did not intend pyramiding punishments for the. same offense. *McGuire,* 110 N.M. at 308, 795 P.2d at 1000 (1990).[8]

*Separate convictions and consecutive sentences for incest and criminal sexual penetration are permissible.* Applying the above-mentioned factors to Swafford's convictions and sentences for incest and criminal sexual penetration, we find no double jeopardy bar to both convictions and to consecutive sentences. At the outset, there is no dispute that the same conduct precipitated both the incest and criminal sexual penetration offenses. Thus, the first part of our test is satisfied.

While no explicit authorization of multiple punishment for criminal sexual penetration and incest appears in the legislative history of the statutes, the second part of our analysis reveals strong indicia of a legislative intent to punish separately each offense. As we recently observed in *Hargrove,* the criminal sexual penetration and incest statutes have different elements and are distinct crimes. *Hargrove,* 108 N.M. at 238, 771 P.2d at 171. Proof of incest, unlike criminal sexual penetration, does not require force or coercion. Incest may be consensual. On the other hand, while the incest statute requires proof that the defendant and victim are within certain degrees of consanguinity, for purposes of the criminal sexual penetration statute the relationship between the victim and the defendant is immaterial. Thus, application of the *Blockburger* test raises a presumption the legislature authorized separate punishments for both incest and criminal sexual penetration arising out of the same conduct.

Moreover, the statutes prohibiting incest and criminal sexual penetration achieve different policy objectives. The sanction against criminal sexual penetration is to prevent forcible, nonconsensual sexual activity and to protect a person's important interests in uncoerced choice of sexual partners. The incest statute, on the other hand, is more narrowly directed toward prohibiting sexual relations, whether consensual or not, between relatives. *Hargrove,* 108 N.M. at 238, 771 P.2d at 171. Accordingly, there is no double jeopardy impediment to convicting and sentencing Swafford to consecutive terms for both incest and criminal sexual penetration arising out of the same act.

*Separate convictions and punishments for assault with intent to commit rape and criminal sexual penetration are permissible in this case.* Swafford next contends that his convictions for assault with intent to commit a felony (criminal sexual penetration) and for third-degree criminal sexual penetration must merge for sentencing. On application of the above-stated test for multiple punishments, we find no double jeopardy bar to punishment for both offenses. The victim testified at trial that Swafford bound her to the bed, struck her several times, and threatened her verbally for a period of time before commencing the sexual assault. Swafford

---

ion below) by way of different statutory schemes.

**8.** Compare this result with our discussion above of the federal rule of lenity in *Jeffers, Prince,* and *Gore.*

admitted to the struggle, but denied sexual contact. We think that the assaultive episode was sufficiently distinct from the sexual assault to support separate convictions and punishments both for assault with intent to commit a felony and for criminal sexual penetration. The conduct underlying the offenses was not unitary. The court was not requested to instruct the jury to consider any question of fact to the contrary. Accordingly, we need not reach the second part of our analysis to conclude that the convictions and sentences for assault and criminal sexual penetration were proper.[9]

*Enhanced sentences—use of statutory elements.* At sentencing, the district court increased Swafford's sentence on the criminal sexual penetration conviction because Swafford committed the crime against his half sister. Swafford contends, and the State concedes, that enhancement based on an element of a separate offense for which he was convicted in the same trial was error. For the reasons set forth below, we agree.

 The trial judge is given broad discretion to enhance or reduce a defendant's sentence based on a finding of aggravating or mitigating circumstances "surrounding the offense and concerning the offender." NMSA 1978, § 31–18–15.1 (Repl.Pamp.1990). While the victim's blood relationship to Swafford arguably was a circumstance surrounding the offense, Section 31–18–15.1, on the other hand, does not by its own terms permit the trial judge to consider the elements of either the offense for which the defendant was sentenced or a separate, but contemporaneous, conviction as an aggravating factor. The court of appeals recognized in *State v. Wilson,* 97 N.M. 534, 538, 641 P.2d 1081, 1085 (Ct. App.), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982), that use alone of the elements of the underlying offense to enhance the sentence for that offense is problematic.[10] The court reasoned that consideration of the elements of the offense lends nothing to the sentencing decision; the elements simply establish the offense, they do not individualize severity or culpability of the criminal conduct. Stated differently, the elements of the offense are ipso facto incorporated by the legislature into the base level sentencing for the offense. Here, the relationship between Swafford and the victim was made part of the sentencing decision for the crime of incest. To permit consideration of that element as an aggravating factor justifying an upward departure in sentencing for criminal sexual penetration would be repetitive of the punishment the legislature has established for the crime of incest.

 Furthermore, in the area of criminal punishment, especially with respect to enhanced sentencing, we feel the legislature has an obligation to state its intentions as clearly as possible. When it cannot be said with certainty that the legislature intended to authorize the imposition of an enhanced sentence under particular circumstances, as a corollary to the rule that criminal statutes must be sufficiently clear and definite to inform a person of ordinary intelligence what conduct is punishable, *State v. Prince,* 52 N.M. 15, 18, 189 P.2d 993, 995 (1948), we presume that the legislature did not so intend. For those reasons, it was error for the court to consider

---

9. This case would present a closer question had it not been for the fact of bondage. Absent that fact, we would be more inclined to find the conduct was unitary and move to the second part of our analysis.

10. *State v. Cawley,* 110 N.M. 705, 799 P.2d 574 (1990), might be read as confirming the propriety of using an essential element of an offense as an aggravating factor to enhance the same offense. In that case we found no error in enhancing the defendant's sentences for rape of a child and criminal sexual contact of a minor based on the age of the victims, despite the fact that the victims' minority (through age twelve or seventeen) is an essential element of each offense. We reasoned, rightly or wrongly, that the youthfulness of multiple victims was an appropriate consideration in relation to the pattern of the defendant's conduct. The instant case presents a different question. Here, the trial judge considered as an aggravating factor an element—the narrowly defined consanguinity between Swafford and the victim—of a separate offense against a single victim for which Swafford was convicted and sentenced in the same proceeding.

the victim's relationship to the defendant as an aggravating factor at sentencing on the criminal sexual penetration count.[11]

 —*Lack of Remorse.* Swafford also challenges the trial court's aggravation of all sentences based on his lack of remorse. This Court, in *State v. Segotta,* 100 N.M. 498, 672 P.2d 1129 (1983), articulated the aggravating or mitigating factors that the trial court may consider and weigh in establishing a defendant's sentence. Lack of remorse was not among the listed factors. Nevertheless, lack of remorse arguably is a circumstance "concerning the offender," Section 31–18–15.1(A), and, thus, is a permissible factor in sentencing. We find no error in the trial court's aggravation of Swafford's sentences based on a lack of remorse.

We do recognize that potential exists for a good deal of mischief in allowing courts to treat a defendant's lack of remorse as a significant consideration in aggravating a sentence. In the abstract, a defendant's lack of remorse as an aggravating factor is not troubling; but the problems inherent in use of that factor are borne out by closer examination. For one, remorse may be equated with a defendant's decision to plead guilty and, accordingly, a lack of remorse might be equated with a decision to proceed to trial. Such an equation raises serious concerns. Because the defendant in this case merely challenged the statutory authority of the trial judge to consider lack of remorse as an aggravating factor, we save for later the question of the reliability of a lack of remorse as a significant factor in sentencing. In the interests of justice, in any event, future sentence enhancements based on a lack of remorse will merit specific findings, and where not so supported will be subject to careful scrutiny on review.

For all of the foregoing reasons, we reverse the order of the district court and remand for resentencing in accordance with this opinion.

IT IS SO ORDERED.

BACA, J., and LESLIE C. SMITH, District Judge, concur.

---

**11.** The trial court aggravated the criminal sexual penetration sentence based on the victim's blood relation to the defendant *and* on a lack of remorse. As we discuss below, we find no error in aggravation based on lack of remorse. Because we do not know the relative weights the trial judge attached to lack of remorse and to blood relation, we remand for resentencing on the criminal sexual penetration conviction.