This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39827**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JORGE IDROVO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Court Judge**

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}**　After a jury trial, Defendant Jorge Idrovo was convicted of aggravated battery against a household member (NMSA 1978, § 30-3-16(C) (2018)); aggravated assault against a household member (NMSA 1978, Section 30-3-13(A)(1) (1995)); criminal damage to property of a household member over $1,000 (NMSA 1978, Section 30-3-18(A) (2009)); arson over $500 (NMSA 1978, Section 30-17-5(A) (2006)); and violation of a restraining order (NMSA 1978, Section 40-13-6 (2013)). On appeal, Defendant argues that (1) the convictions for aggravated battery and aggravated assault as well as

the convictions for arson and criminal damage to property violate double jeopardy; (2) the failure to provide a definitional jury instruction amounted to fundamental error; (3) insufficient evidence supports Defendant's conviction for aggravated battery; and (4) Defendant's Sixth Amendment right to self-representation was infringed. We agree that Defendant's double jeopardy rights were violated with regard to the convictions for arson and criminal damage to property and therefore remand for the district court to vacate one of those convictions and to resentence Defendant accordingly. We affirm in all other respects.

## DISCUSSION

### I.     Double Jeopardy

**{2}**     Defendant argues that his convictions for aggravated assault and aggravated battery, as well as his convictions for arson and criminal damage to property, violate double jeopardy protections. We review Defendant's double description claims de novo, *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747, under the two-part test in *Swafford v. State*, 1991-NMSC-043, ¶¶ 9, 25 112 N.M. 3, 810 P.2d 1223. First, we consider "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes." *Id.* ¶ 25. If the conduct is unitary, we ask "whether the legislature intended to create separately punishable offenses." *Id.* Double jeopardy is violated "if the first part of the test is answered in the affirmative, and the second in the negative." *Id.*

### A.     Defendant's Convictions for Aggravated Battery and Aggravated Assault Do Not Violate Double Jeopardy

**{3}**     Reviewing the first set of convictions for aggravated battery and aggravated assault, we ask whether the factual circumstances underlying the convictions constituted unitary conduct. For reasons we will explain, we conclude that the evidence presented at trial provided distinct factual bases for the charged offenses and the conduct was therefore not unitary.

**{4}**     To determine whether conduct is unitary, we consider whether "the offenses are separated by sufficient indicia of distinctness." *State v. Ford*, 2007-NMCA-052, ¶ 12, 141 N.M. 512, 157 P.3d 77 (text only). In conducting this analysis, we ask whether "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Swafford*, 1991-NMSC-043, ¶ 29. We look at factors such "as whether the acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and a defendant's goals for and mental state during each act." *Ford*, 2007-NMCA-052, ¶ 12. Additionally, we consider whether "one crime is completed before another is committed, or [if] the force used to commit a crime is separate from the force used to commit another crime." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227.

**{5}**     Defendant asks us to conclude that the State failed to show sufficient indicia of distinctness between the aggravated battery and the aggravated assault, as both attacks involved strangulation. The record, however, establishes that the conduct was not unitary because (1) there was an intervening event between the two incidents and (2) the force used to commit the battery was distinct from the force used to commit the assault.

**{6}**     First, Victim's attempts to protect herself from Defendant's attack spurred an intervening act, which separated the battery from the assault. This Court has "characterized a victim's efforts to protect themself from a defendant during an attack with different weapons as an intervening event." *State v. Phillips*, 2021-NMCA-062, ¶ 14, 499 P.3d 648; *see also State v. DeGraff*, 2006-NMSC-011, ¶ 30, 139 N.M. 211, 131 P.3d 61 (finding an intervening event between an aggravated burglary and subsequent murder when the defendant used multiple weapons during the attack and evidence suggested a struggle between the defendant and victim where the victim defended themselves). After repeatedly telling Defendant to get off, Victim "pushed [Defendant] off," and "[Defendant] ran into the kitchen and grabbed a knife." After returning from the kitchen, Defendant initiated the second attack. Victim pushing Defendant off after the first attack and Defendant leaving the room to obtain a weapon constituted an intervening event and a demonstrable break between the two acts.

**{7}**     Second, Defendant's conduct was not unitary because the force used to commit the battery was different than the force used to commit the assault. *See Sena*, 2020-NMSC-011, ¶ 46. During the initial attack, Victim was seated on the couch, and Defendant got on top of Victim and began to strangle Victim with his hands. When Defendant returned from the kitchen after the initial strangulation, Defendant used one hand to strangle Victim while using the other hand to hold a knife to Victim's throat. The use of a weapon in the second attack was a force distinct from the initial strangulation.

**{8}**     Because the conduct underlying the two convictions was not unitary, there was no violation of double jeopardy, and we do not reach the second prong of the *Swafford* analysis to determine legislative intent. *See State v. Reed*, 2022-NMCA-025, ¶ 8, 510 P.3d 1261.

## B.     Defendant's Convictions for Criminal Damage to Property and Arson Violate Double Jeopardy

**{9}**     Defendant also argues that the convictions for criminal damage to property and arson violate double jeopardy. We again begin by determining whether the conduct in question was unitary considering the indicia of distinctness. *See Ford*, 2007-NMCA-052, ¶ 12. We conclude that the conduct underlying the arson and the criminal damage to property was one continuous act of property destruction and was therefore unitary because (1) the conduct was not separated by time or physical distance and (2) Defendant acted with the same intent—to destroy Victim's property.

**{10}** First, the acts underlying arson and criminal damage to property were not separated by "either time or physical distance," *State v. Barrera*, 2001-NMSC-014, ¶ 36, 130 N.M. 227, 22 P.3d 1177, and there was no clear "sequence in which they occurred." *Ford*, 2007-NMCA-052, ¶ 12. The trial testimony shows that the acts of arson and criminal damage to property happened simultaneously and exclusively within Victim's home. When the responding officer arrived, there was "black smoke coming from the residence," and the officer observed a television being thrown out of the front door. Victim described acts of arson and criminal damage to property that happened at the same time, and Victim did not identify any intervening event. *See DeGraff*, 2006-NMSC-011, ¶ 35. In addition, Victim testified that there was no fire or any damage to the home when Victim left after being attacked. The property destruction happened within the confines of Victim's home in a short period of time, and there was no clear end to one crime before the other crime began.

**{11}** Second, with regard to Defendant's intent, *see Ford*, 2007-NMCA-052, ¶ 12, based on our review of the record, we are aware of no "significant change in the nature or objective of Defendant's conduct." *State v. Sorrelhorse*, 2011-NMCA-095, ¶ 11, 150 N.M. 536, 263 P.3d 313 (holding that attempting to force open a door and beating on a door were unitary conduct because "[the d]efendant's intent was to open the door to the apartment by physical force"). After the altercation between Victim and Defendant, Defendant testified that he was "upset" and began "breaking stuff," before "stuffing the chimney and fireplace." Defendant's remarks demonstrate that Defendant acted with one purpose—to destroy Victim's property—when Defendant set Victim's personal belongings on fire and used a bat to damage Victim's possessions. *See Barrera*, 2001-NMSC-014, ¶ 36 (using the defendant's remarks to identify his objectives). For these reasons, we conclude that the conduct was unitary.

**{12}** Because the conduct was unitary, we move to the second step of the *Swafford* analysis: whether the Legislature intended to allow for multiple punishments. 1991-NMSC-043, ¶ 25. If the Legislature does not explicitly provide for multiple punishments in the statute, we apply either the strict-elements test outlined in *Blockburger v. United States*, 284 U.S. 299 (1932), or a modified version of the *Blockburger* test. *See State v. Begaye*, 2023-NMSC-015, ¶¶ 23-24, 533 P.3d 1057. When a statute is vague or written in the alternative, we use the modified *Blockburger* test to discern legislative intent, considering whether—in light of the State's legal theory—the statutes require proof of independent facts. *See Porter*, 2020-NMSC-020, ¶¶ 18-20, 476 P.3d 1201. Here, because the arson statute is written in the alternative, *see* § 30-17-5(A), we apply the modified *Blockburger* test to determine whether one offense subsumes the other. Defendant argues that, under the State's theory, the arson offense is subsumed by criminal damage to property. For the following reasons, we agree.

**{13}** Under the modified *Blockburger* test, we look to the indictment, the trial testimony, jury instructions, and the State's opening statement and closing arguments to determine whether the State used the same evidence to support both convictions. *See Begaye*, 2023-NMSC-015, ¶¶ 17-18. The language in the charging document and the jury instructions suggest that the same evidence could support both charges and that

the arson conviction might have been subsumed by the criminal damage to property conviction. In the indictment, the State charged Defendant with criminal damage to property on the theory that Defendant "intentionally damage[d] any real, personal, community or jointly owned property" and that "the damage to [Victim's] interest in the property was more than $1,000." The charge of arson was based on the theory that Defendant "intentionally or maliciously started a fire or caused an explosion with the intent to destroy or damage . . . property" with "a market value of over $500." The jury instructions use similar language, requiring the jury to find for criminal damage to property that "[D]efendant intentionally damaged personal property" and that "damage to [Victim's] interest in the property was more than $1,000." For arson, the jury was required to find that "[D]efendant intentionally or maliciously started a fire . . .with the intent to destroy a purse, wallet, credit cards, a cell phone and other property" and that there was "over $1,000 in damage to the property."

**{14}**    Because the charging documents and jury instructions would have allowed the jury to rely on the same evidence to find Defendant guilty of both arson and criminal damage to property, we determine whether the same evidence supported the two convictions by examining the State's opening statement, the trial testimony, and the State's closing arguments. *See id.* ¶ 26. In its opening statement, the State drew no distinction between the conduct underlying the charge of arson and the charge of criminal damage to property, describing one continuous act of property destruction:

> [W]ords cannot do justice to the damage that was done. . . . [T]he Defendant was in the process of burning a number of [Victim's] belongings out of pure anger. Her purse, credit cards, phone. He caused thousands of dollars of damage to her house. He grabbed a bat, smashed the toilet, smashed a mirror, smashed windows. Took the plasma TV off the wall and threw it out the front door and it smashed.

Based on this description by the State, it is unclear what property was damaged under which legal theory. This conflation of the evidence supporting the arson charge and the evidence supporting the criminal damage to property charge continued throughout Victim's testimony, as Victim repeatedly noted that total amount of the damage—including the fire damage—was over $30,000. Similarly, in closing argument, the State did not distinguish between damage caused by the arson and criminal damage to property. The State repeatedly used the $30,000 plus figure to meet the minimum damage required for the charge of criminal damage to property. This figure included the damage caused to the house by the fire. Reviewing the opening statement, trial testimony, and closing arguments, together with the charging documents and jury instructions, we conclude that the same evidence was used to support both convictions. Therefore, the elements for arson are subsumed within the criminal damage to property under the State's theory.

**{15}**    Because both elements of the *Swafford* test are met, Defendant's convictions for arson and criminal damage to property violate double jeopardy, and we therefore remand to the district court to determine which conviction to vacate. *See Porter*, 2020-

NMSC-020, ¶ 42 (holding that if "both offenses result in the same degree of felony, the choice of which conviction to vacate lies in the sound discretion of the district court").

## II. The Failure to Provide a Definitional Jury Instruction Did Not Amount to Fundamental Error

**{16}** Defendant argues that the district court erred by failing to provide the jury with a definitional instruction on how to calculate the damages for the charge of criminal damage to property and that this failure amounted to fundamental error. We disagree.

**{17}** The applicable standard of review for jury instructions "depends on whether the issue has been preserved." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "If the error has been preserved we review the instructions for reversible error. . . . If not, we review for fundamental error." *Id.* (citation omitted). Defendant did not preserve the issue, so we review for fundamental error.

**{18}** Defendant argues that a definitional instruction about how to calculate the requisite amount of damage—over $1,000—should have been given in conjunction with the instruction on criminal damage to property. The uniform instruction for criminal damage to property of a household member—UJI 14-318 NMRA—includes a Use Note that requires that certain language be used if the amount of damage is alleged to be more than $1,000. The Use Note further provides that, if this "language is used, UJI 14-1510 must also be given." UJI 14-318. UJI 14-1510 NMRA defines "amount of damage" as "the difference between the price at which the property could ordinarily be bought or sold prior to the damage and the price at which the property could be bought or sold after the damage."

**{19}** Here, under the criminal damage to property instruction given by the district court, the jury was required to find that "[t]he damage to [Victim's] interest in the property was more than $1,000," but the definitional instruction on calculating damages was not given. Defendant argues that this rose to the level of fundamental error. The State concedes that it was error to not give the additional instruction, but argues this did not rise to the level of fundamental error. We agree with the State.

**{20}** While the failure to instruct on an essential element usually rises to the level of fundamental error, "the failure to instruct on a definition or amplification of an essential element, even when called for in an official UJI Use Note," usually does not. *State v. Barber*, 2004-NMSC-019, ¶¶ 13, 32, 135 N.M. 621, 92 P.3d 633 (concluding that the omission of the definition of "possession" did not merit reversal under the fundamental error analysis). Defendant concedes that the jury instruction at issue is a definitional instruction and not an instruction on an essential element.

**{21}** To determine whether the absence of the definition of "amount of damages" constituted fundamental error, "we evaluate whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Rodarte*, 2011-NMCA-067, ¶ 10, 149 N.M. 819, 255 P.3d 397 (text only); *Barber*, 2004-NMSC-019, ¶ 19

(holding that whether a failure to provide a definitional instruction is fundamental error "begins at the same place as our analysis for reversible error"). "[W]e must place all the facts and circumstances under close scrutiny to see whether the missing instruction caused such confusion that the jury could have convicted [the d]efendant based upon a deficient understanding of the legal meaning of . . . an essential element of the crime." *Barber*, 2004-NMSC-019, ¶ 25.

**{22}**    Confusion can result when "the term being defined has a legal meaning different from the commonly understood lay interpretation." *State v. Luna*, 2018-NMCA-025, ¶ 22, 458 P.3d 457 (text only). Here, Defendant claims that there is an ambiguity regarding the term "interest" as it relates to property value in this context. Defendant, however, has not presented a compelling argument that the phrase "interest in property" has a "legal meaning different from the commonly understood lay interpretation." *See id.* ¶¶ 22, 26. We therefore are not persuaded that the failure to give the definitional instruction amounted to fundamental error under these circumstances.

**{23}**    Reversal is also unwarranted here because "no distinct possibility exists from the evidence that the jury convicted Defendant without finding all the elements beyond a reasonable doubt." *See Barber*, 2004-NMSC-019, ¶ 26. No argument or evidence was presented to suggest that the jury should calculate the amount of damage using anything other than the methodology described in UJI 14-1510, and no matter what methodology was used, the damage caused by Defendant was well over $1,000.

**{24}**    We therefore conclude that the failure to give the definitional instruction did not amount to fundamental error.

### III.    Sufficient Evidence Supports Defendant's Conviction for Aggravated Battery

**{25}**    Defendant challenges the sufficiency of the evidence underlying his conviction for aggravated battery with great bodily harm against a household member. When reviewing for sufficiency of evidence, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (text only). We ask "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (text only). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Id.* Here, looking to the given jury instructions and analyzing the claim of error under our deferential standard of review, we conclude that there was sufficient evidence for a rational trier of fact to have found Defendant guilty of aggravated battery.

**{26}**    Contrary to Defendant's argument, the jury instruction did not require the State to prove that Victim *actually* suffered great bodily harm. Instead, the State was required to prove that Defendant "acted in a way that would *likely* result in death or great bodily harm to [Victim]." (Emphasis added.) At trial, Victim's testimony about the severity of the

strangulation itself and the impact it had on Victim satisfied this requirement, and the jury was entitled to believe—and apparently did believe—Victim.

**{27}** Viewing the evidence in the light most favorable to the verdict, we conclude that sufficient evidence supported Defendant's conviction for aggravated battery.

### IV. Defendant's Right to Self-Representation Was Not Violated by the District Court's Appointment of Standby Counsel

**{28}** Defendant argues that, under *Faretta v. California*, 422 U.S. 806 (1975), the district court erred in appointing standby counsel after determining that Defendant was competent to proceed pro se. We disagree.

**{29}** Defendant's claim of error raises a question of Sixth Amendment law. Because there are no factual disputes at issue, we review Defendant's constitutional claim de novo. *See id.* at 821 ("The Sixth Amendment . . . implies a right of self-representation."); *State v. Stallings*, 2020-NMSC-019, ¶ 35, 476 P.3d 905 (reviewing waiver of constitutional right to counsel de novo).

**{30}** Even over the objection of the defendant, a trial court may appoint standby counsel to assist the defendant and "to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834 n.46; *State v. Rotibi*, 1994-NMCA-003, ¶ 13, 117 N.M. 108, 869 P.2d 296. Defendant argues that "this was not a case where stand-by counsel was necessary" and that "no circumstances [were] present to concern the court." However, when determining whether an individual's right to self-representation was violated, the relevant inquiry is whether the pro se defendant was "allowed to control the organization and content of [their] own defense." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). This includes the ability "to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.*

**{31}** Here, the record indicates that Defendant was in control of his defense before and throughout the trial. Defendant made pretrial motions, conducted his pretrial hearing, participated in voir dire, conducted cross examinations, testified, and delivered opening statement and closing argument. On appeal, Defendant fails to identify anything that standby counsel did or failed to do that infringed upon Defendant's ability to represent himself or control his own defense. We conclude that there was no violation of Defendant's right to self-representation.

### CONCLUSION

**{32}** We remand for the district court to exercise its discretion to vacate either the conviction for arson or the conviction for criminal damage to property and to resentence Defendant accordingly. *See Porter*, 2020-NMSC-020, ¶ 42. We affirm in all other respects.

**{33}** IT IS SO ORDERED.

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**