2006-NMCA-152

148 P.3d 798

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Michael J. ARMENDARIZ,
Defendant–Appellant.**

**No. 24,448.**

Court of Appeals of New Mexico.

Oct. 11, 2006.

Certiorari Denied, No. 30,085,
Nov. 27, 2006.

Certiorari Granted, No. 30,127,
Dec. 14, 2006.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant appeals his convictions for one count of false imprisonment, one count of aggravated burglary, and two counts of criminal sexual penetration in the second degree (CSP II). Defendant argues that his convictions for false imprisonment and aggravated burglary violate the prohibition against double jeopardy because they are based on unitary conduct and are subsumed within his CSP II convictions. Defendant also argues that his convictions for two counts of CSP II violate double jeopardy because there was only one continuous course of conduct. Finally, Defendant argues that he was denied a fair trial based on the prosecutor's improper comments.

{2} We reverse in part and affirm in part. Because Defendant's convictions for aggravated burglary and false imprisonment violate his constitutional right to be free from double jeopardy, we vacate those convictions. We affirm Defendant's convictions for two counts of CSP II.

## BACKGROUND

{3} Victim testified as follows. She was asleep in her bedroom and woke up when someone jumped on top of her. The assailant, whom Victim later identified as Defendant, told her to perform oral sex and Defendant's penis touched her lips. Defendant also penetrated Victim's vagina with his penis. After Defendant ejaculated he let Victim go, at which time she ran to the bathroom and locked the door. She rinsed herself off, eventually came out, and saw Defendant still sitting on her bed. While Victim was screaming at and chasing Defendant out of her home, she asked him how he entered. Defendant indicated that he entered her residence through the kitchen window.

## DOUBLE JEOPARDY

{4} Defendant argues that his convictions for aggravated burglary and false imprisonment violate the prohibition against double jeopardy. Defendant also argues that his convictions for two counts of CSP II are impermissible on double jeopardy grounds.

We review Defendant's double jeopardy claim de novo. *See State v. Mora*, 2003–NMCA–072, ¶ 16, 133 N.M. 746, 69 P.3d 256. We "indulge in all presumptions in favor of the verdict" when reviewing the facts. *See State v. McClendon*, 2001–NMSC–023, ¶ 5, 130 N.M. 551, 28 P.3d 1092 (internal quotation marks and citation omitted).

{5} The protection against double jeopardy "protects against both successive prosecutions and multiple punishments for the same offense." *State v. Mora*, 1997–NMSC–060, ¶ 64, 124 N.M. 346, 950 P.2d 789; U.S. Const. amend. V; N.M. Const. art. II, § 15 (stating that no person shall "be twice put in jeopardy for the same offense"). The double jeopardy prohibition against multiple punishments relates to two general categories: (1) "unit of prosecution," which prohibits charging a defendant with "multiple violations of a single statute based on a single course of conduct" and (2) "double-description," which prohibits charging a defendant with "violations of multiple statutes for the same conduct" in violation of the legislature's intent. *State v. DeGraff*, 2006–NMSC–011, ¶ 25, 139 N.M. 211, 131 P.3d 61; *see also Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). Defendant's arguments that his CSP II, false imprisonment, and aggravated burglary convictions are based on the same conduct raise double-description issues. Defendant's argument that his convictions for two counts of CSP II are based on a single course of conduct raises a unit of prosecution issue.

## DOUBLE DESCRIPTION

{6} We address double jeopardy claims involving double description under the two-part analysis set forth in *Swafford*, 112 N.M. at 13–14, 810 P.2d at 1233–34. First, we determine whether the conduct is unitary. *Id.* If the conduct is non-unitary, multiple punishments do not violate the Double Jeopardy Clause, and our analysis ends. *Id.* at 14, 810 P.2d at 1234. Second, if the conduct can reasonably be said to be unitary, we address "whether the legislature intended multiple punishments." *Id.* If the legislature intended multiple punishments, there is no

double jeopardy violation even though the conduct for the offenses is unitary. *Id.*

{7} The issue of whether conduct is unitary under the first part of a *Swafford* analysis requires a careful review of the evidence. As recognized in *State v. Cooper*, 1997–NMSC–058, ¶ 59, 124 N.M. 277, 949 P.2d 660, "unitary conduct" is more easily defined by what it is not. Conduct is non-unitary if sufficient "indicia of distinctness" separate the illegal acts. *Id.* Such indicia of distinctness are present when "two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)." *Swafford*, 112 N.M. at 13–14, 810 P.2d at 1233–34. But if time and space considerations are not determinative, "resort must be had to the quality and nature of the acts or to the objects and results involved." *Id.* There are sufficient indicia of distinctness when one crime is completed before another. *DeGraff*, 2006–NMSC–011, ¶ 27, 139 N.M. 211, 131 P.3d 61. There are also sufficient indicia of distinctness when the conviction is supported by at least two distinct acts or forces, one which completes the first crime and another which is used in conjunction with the subsequent crime. *Id.* In both situations, the key inquiry is whether the same force was used to commit both crimes. *See id.* ¶ 30.

{8} If the conduct underlying two offenses is unitary, we engage in the second part of the *Swafford* analysis to determine whether the legislature intended multiple punishments for the same conduct. Absent any express legislative authorization of multiple punishments for the crimes at issue, we ascertain legislative intent by applying the test from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under this test, we ask "whether each provision requires proof of a fact which the other does not," *id.* at 304, 52 S.Ct. 180, and, if not, "one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. If each statute requires proof of a fact that the other does not, we presume that the legisla-

ture intended multiple punishments. *Id.* That presumption can, however, be rebutted by other evidence of legislative intent. *Id.*

## AGGRAVATED BURGLARY AND CSP II

{9} Defendant argues that his conduct was unitary because there were insufficient indicia of distinctness differentiating the acts underlying his aggravated burglary conviction from those underlying his CSP II convictions. He argues that his aggravated burglary was not completed until he committed battery against Victim, and that he only committed one battery, which was the same force used to perpetrate the CSP II. The State argues that the acts were not unitary because the aggravated burglary was completed "at the time that Defendant grabbed the victim," whereas the CSP II was not completed until moments later. We agree with Defendant.

{10} In the present case, no indicia of distinctness between the aggravated burglary and the CSP II acts are present. Defendant was charged with aggravated burglary, which required that he "touched or applied force to [Victim] in a rude or angry manner." The force used to complete aggravated burglary—Defendant's acts of lying on top of Victim, grabbing Victim by her hair and flipping her over—constituted the same force used to restrain Victim to accomplish CSP II. *See State v. Crain,* 1997–NMCA–101, ¶ 17, 124 N.M. 84, 946 P.2d 1095 (holding that conduct constituting CSP II and kidnapping was unitary because the defendant was charged with both offenses based on "the use of force during the same act of sexual intercourse"). No intervening struggle interrupted the two events. *See Cooper,* 1997–NMSC–058, ¶¶ 61–62, 124 N.M. 277, 949 P.2d 660 (finding non-unitary conduct when a struggle "was an intervening event between the initial battery and the acts that caused the death"). Defendant did not attack Victim with multiple weapons. *See State v. Foster,* 1999–NMSC–007, ¶¶ 18, 34, 126 N.M. 646, 974 P.2d 140 (finding conduct to be non-unitary when the defendant used a glass ashtray to hit the victim and an extension cord to strangle her to death). There was no change in location. *See State v. Kersey,* 120

N.M. 517, 523, 903 P.2d 828, 834 (1995) (finding non-unitary conduct when the victim was killed "more than two hours [after], [and] nearly sixty miles distant from the abduction"). Finally, Defendant's intent in lying on top of Victim and flipping her over—the last act of his aggravated burglary—was to commit CSP II. *See State v. Barrera,* 2001–NMSC–014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (finding non-unitary conduct because the defendant "approached the victim with the intent to steal the truck, but ... he shot the victim to silence her"). The conduct underlying Defendant's convictions for CSP II and aggravated burglary was therefore unitary.

{11} We must next determine the legislature's intent. The statutes do not expressly allow multiple punishments. *See* NMSA 1978, § 30–9–11 (2001) (amended 2003); NMSA 1978, § 30–16–4 (1963). We therefore apply the *Blockburger* test, determining whether each statute requires proof of a fact that the other does not. *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. We conclude that aggravated burglary is subsumed within CSP II when, as here, conviction for CSP II requires proof that Defendant had sexual contact with Victim "during the commission of aggravated burglary." Our result is dictated by *DeGraff,* 2006–NMSC–011, ¶ 26, 139 N.M. 211, 131 P.3d 61, in which our Supreme Court recognized that, because "[t]here can be no conviction for killing in the course of a felony without proof of all of the elements of the felony," "the predicate felony is subsumed within the offense of felony murder, and cannot support a separate conviction." *See also State v. Pisio,* 119 N.M. 252, 262, 889 P.2d 860, 870 (Ct.App.1994) ("[T]he constitutional protection against double jeopardy precludes multiple punishment for both the greater offense of CSP II, felony, and the aggravating factor, kidnapping, when the conduct is unitary."). Because aggravated burglary is subsumed within CSP II, Defendant's convictions for both aggravated burglary and CSP II impose a greater punishment than that intended by the legislature. We therefore vacate Defendant's aggravated burglary conviction.

## FALSE IMPRISONMENT AND CSP II

{12} Defendant also argues that the court erred in failing to vacate his false imprisonment conviction. We again engage in a *Swafford* analysis, addressing first whether the conduct was unitary and, if so, examining whether the legislature intended multiple punishments for the unitary conduct.

{13} Victim awakened when Defendant was on top of her. While verbally assaulting Victim, Defendant restrained Victim and both orally and vaginally penetrated Victim with his penis. Upon completion of the sexual conduct, Defendant released Victim, thus simultaneously completing both the false imprisonment and the CSP II. The same force used to effect false imprisonment was used to commit CSP II. The conduct was therefore unitary. *See State v. Allen*, 2000–NMSC–002, ¶ 67, 128 N.M. 482, 994 P.2d 728 (noting that conduct would not be unitary if "the perpetrator forcibly abducted the victim before attempting sexual penetration or continued to use force or restraint after the sex act was completed").

{14} Because we have concluded that the conduct underlying Defendant's convictions for CSP II and false imprisonment was unitary, we must determine whether the legislature intended multiple punishments for false imprisonment and CSP II. The statutes at issue in this case do not expressly provide for multiple punishment. *See* § 30–9–11; NMSA 1978, § 30–4–3 (1963). We must therefore apply the *Blockburger* test and compare the elements of the relevant statutes to determine whether the legislature intended multiple punishments. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

{15} "When applying the *Blockburger* test to ... offenses that may be charged in alternate ways, we look only to the elements of the statutes as charged to the jury and disregard the inapplicable statutory elements." *See State v. Armijo*, 2005–NMCA–010, ¶ 22, 136 N.M. 723, 104 P.3d 1114. Defendant's convictions for CSP II require that the jury find that Defendant caused Victim to engage in sexual conduct during the commission of an aggravated burglary. *See* § 30–9–11(D)(5). Because commission of aggravated burglary is an element of CSP II, we also consider the charged elements of aggravated burglary in our *Blockburger* analysis: that Defendant "entered a dwelling without authorization;" that Defendant did so "with the intent to commit a criminal sexual penetration or false imprisonment once inside;" and that Defendant "touched or applied force to [Victim] in a rude or angry manner while entering or leaving, or while inside." *See* § 30–16–4(C). Defendant's conviction for false imprisonment requires that Defendant "restrained or confined [Victim] against her will" when he "knew that he had no authority" to do so. *See* § 30–4–3.

{16} Defendant's conviction for false imprisonment is not subsumed within his CSP II convictions because each required proof of a fact that the other did not. On the one hand, Defendant's CSP II convictions required proof of sexual conduct perpetrated in the commission of aggravated burglary. Defendant's false imprisonment conviction did not. On the other hand, Defendant's false imprisonment conviction required that Defendant restrained Victim against her will when he knew that he had no authority to do so. While Defendant's CSP II convictions required proof that Defendant "knew or should have known that permission to enter [Victim's apartment] had been denied," they do not require proof of Defendant's knowledge that he had no authority to restrain Victim. Because false imprisonment and CSP II each requires proof of a fact that the other does not, a presumption arises that the legislature intended multiple punishments. *Swafford*, 112 N.M. at 8, 14, 810 P.2d at 1228, 1234.

{17} But this presumption is not conclusive and may be overcome by other indicia of legislative intent, such as a strong similarity in the social evils to be proscribed or a significant difference in the quantum of punishment allowed. *Id.* at 14–15, 810 P.2d at 1234–35. We also consider whether the statutes are usually violated together. *State v. Gonzales*, 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992). As to the social evils proscribed, "[t]he CSP statute is designed to prevent unwanted sexual violence while the false imprisonment statute is designed to

prevent unlawful restraint of any sort." *State v. Fielder,* 2005–NMCA–108, ¶ 31, 138 N.M. 244, 118 P.3d 752, *cert. granted,* 2005–NMCERT–008, 138 N.M. 330, 119 P.3d 1267, *and cert. quashed,* 2006–NMCERT–004, 139 N.M. 430, 134 P.3d 121. Based on this factor, the statutes may be viewed as amenable to multiple punishments. However, the differing quantum of punishments for the respective crimes suggests otherwise. Defendant's convictions for CSP II are punishable by nine-year sentences, *see* NMSA 1978, § 31–18–15(A)(2) (1993) (amended 2005), whereas eighteen months could have been imposed for false imprisonment. *See* § 31–18–5(A)(4); *Swafford,* 112 N.M. at 15, 810 P.2d at 1235 ("Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes."). One additional factor persuades us that the legislature did not intend to authorize punishments for both false imprisonment and CSP II arising out of the same conduct. As we have recognized, CSP II and false imprisonment are offenses that, as a practical matter, are committed together. *See Crain,* 1997–NMCA–101, ¶¶ 21–22, 124 N.M. 84, 946 P.2d 1095 (noting that force or restraint is "necessarily involved in every sexual penetration without consent"); *see also Fielder,* 2005–NMCA–108, ¶¶ 31–33, 138 N.M. 244, 118 P.3d 752 (finding that, although restraint is "necessarily" committed with CSP, the legislature nonetheless intended to authorize multiple punishments for CSP III and false imprisonment because the social evils are different and the quantum of punishment is similar). As a result, because commission of CSP II usually, if not always, involves commission of false imprisonment, but is punishable by a significantly greater sentence, we hold that the legislature did not intend multiple punishments for false imprisonment and CSP II in this case.

■ {18} We lastly note that, contrary to Defendant's representation, we do not agree that the prosecutor conceded that the false imprisonment conviction violated double jeopardy principles. A review of the transcript shows that the parties disputed the application of double jeopardy. Because the

district court apparently believed that double jeopardy issues may be resolved by concurrent sentencing, the district court declined to rule on Defendant's argument. A sentencing merger, however, fails to correct a double jeopardy violation. *See Mora,* 2003–NMCA–072, ¶ 27, 133 N.M. 746, 69 P.3d 256 (holding that a double jeopardy violation was not rendered harmless by concurrent sentencing). We vacate Defendant's conviction for false imprisonment.

## UNIT OF PROSECUTION

■ {19} Defendant argues that his two convictions for CSP II violate the double jeopardy prohibition against "unit of prosecution" multiple punishments. *Herron v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (1991), sets forth six factors for addressing whether distinct criminal sexual penetrations have occurred during a continuous attack:

> (1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) defendant's intent as evidenced by his conduct and utterances; and (6) number of victims ( . . . multiple victims will likely give rise to multiple offenses).

We need not consider all of the *Herron* factors because *Herron* also states that "[e]xcept for penetrations of separate orifices with the same object, none of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions." *Id.* at 362, 805 P.2d at 629. Because Defendant's penis penetrated Victim's mouth and vagina, the evidence supports the conclusion that the CSP II offenses were separate and distinct. Defendant's convictions for two counts of CSP II therefore do not violate his right to be free from double jeopardy.

## PROSECUTORIAL MISCONDUCT

{20} Defendant argues that he was denied a fair trial based on the prosecutor's improper comments. Specifically, Defendant refers to the prosecutor's voir dire characterization of the events as "crimes," "burglary," and an "unauthorized entry ... into the victim's home." Defendant further characterizes as prosecutorial misconduct the prosecutor's reference to Defendant as "a rapist," as well as the prosecutor's statement that "what you're going to hear about in this case is that there was sexual intercourse forced to the victim." Defendant also generally asserts that the prosecutor "was allowed to instruct the venire on the law." Defendant lastly argues, without any reference to the transcript, that the prosecution during closing argument improperly referred to Defendant as "a rapist and a burglar."

{21} We review Defendant's claims of prosecutorial misconduct under an abuse of discretion standard. *See State v. Jett,* 111 N.M. 309, 314, 805 P.2d 78, 83 (1991); *see also State v. Trujillo,* 2002–NMSC–005, ¶ 49, 131 N.M. 709, 42 P.3d 814 (noting that the "trial court is in the best position to evaluate the significance of any alleged prosecutorial errors") (internal quotation marks and citation omitted). In addressing Defendant's arguments, we consider "whether the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *See State v. Duffy,* 1998–NMSC–014, ¶ 46, 126 N.M. 132, 967 P.2d 807.

{22} Regarding the prosecutor's voir dire comments, we agree with the State that the prosecutor's reference to "crimes," including the specific reference to burglary, unauthorized entry, and "forced intercourse" was not inappropriate as these identified the charged crimes. Similarly, the prosecutor's references to terms used in the jury instructions did not instruct the jurors on the law, but instead were made in the context of exploring potential jurors' attitudes about the sensitive subject of the CSP II crimes and therefore were not unfairly prejudicial. Further, although any reference by the prosecutor to Defendant as a "rapist" and "burglar" was arguably inappropriate, such reference does not merit reversal without a clear demonstration of prejudice. *See State v. Martinez,* 99 N.M. 353, 355–56, 658 P.2d 428, 430–31 (1983) (recognizing that the prosecutor's characterization of the defendant as a "chola punk" was inappropriate but finding that any prejudice that might have resulted was adequately cured by instructions to the jury to disregard it); *State v. Chavez,* 116 N.M. 807, 815, 867 P.2d 1189, 1197 (Ct.App. 1993) (finding no misconduct in the prosecutor's characterization of the defendant as "a 'loose cannon,' a 'macho tough guy,' and a 'very, very dangerous' person" because it "could arguably be justified" by the evidence); *State v. Diaz,* 100 N.M. 210, 214–15, 668 P.2d 326, 330–31 (Ct.App.1983) (noting that extensive use of "vituperative language" by the prosecutor, such as references to the defendant as "a 'yo yo', as 'stupid', as a 'thief', and as a 'crook' " inflamed the jury and, in combination with other misconduct, warranted reversal); *State v. Vigil,* 86 N.M. 388, 392, 524 P.2d 1004, 1008 (Ct.App.1974) (finding that, in light of evidence that the defendant had been convicted of petty theft and other crimes, the prosecutor's characterization of the defendant as a "punk" was "a comment on the evidence not amounting to reversible error").

{23} Unlike *State v. Breit,* 1996–NMSC–067, ¶ 45, 122 N.M. 655, 930 P.2d 792, in which the prosecutor's misconduct was "unrelenting and pervasive" and included inflaming the jury with irrelevant allegations, exaggerating claims without evidentiary support, belittling the defendant's fundamental right to remain silent, and suggesting that opposing counsel were lying, the comments in the present case were isolated and of little, if any, impact. *See State v. Boergadine,* 2005–NMCA–028, ¶ 31, 137 N.M. 92, 107 P.3d 532 (holding that comments constituting an "isolated, minor impropriety" did not deprive the defendant of a fair trial) (internal quotation marks and citation omitted); *State v. Taylor,* 104 N.M. 88, 96, 717 P.2d 64, 72 (Ct.App. 1986) (noting that isolated comments were not so pervasive or prejudicial as to deprive the defendant of a fair trial).

{24} As for the prosecutor's comments during closing argument, Defendant made no objections to these comments. *See State v. Tafoya,* 94 N.M. 762, 764, 617 P.2d 151, 153 (1980) (refusing to review an allegedly improper prosecutorial statement when defendant made no timely objection). Although this Court will review, in the absence of an objection, "certain categories of prosecutorial misconduct that compromise a defendant's right to a fair trial"—such as comments on a defendant's right to silence—any reference to Defendant as a "rapist" or "burglar" does not fall within these categories. *Allen,* 2000–NMSC–002, ¶ 27, 128 N.M. 482, 994 P.2d 728.

CONCLUSION

{25} We affirm Defendant's convictions for two counts of CSP II. We reverse and remand to vacate Defendant's convictions for false imprisonment and aggravated burglary, with instructions that Defendant be resentenced consistent with this opinion.

{26} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and CYNTHIA A. FRY, Judge.