This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 29,774**

**CORNELIUS WHITFIELD,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

After a jury trial where the victim testified, Defendant Cornelius Whitfield was convicted of first degree kidnaping, second degree criminal sexual penetration (CSP II), and criminal sexual contact of a minor. On appeal, Defendant argues that the

victim's testimony should not have been admitted because he was incompetent to testify and that the district court improperly allowed the State and its lay witnesses to refer to the victim's mild mental retardation at trial. Having been alerted by the State to a possible double jeopardy violation, we conclude that Defendant's convictions for kidnaping and CSP II violate principles of double jeopardy, and we therefore remand with instructions to vacate one of these convictions. We affirm on all other issues.

**BACKGROUND**

Because the parties are familiar with the factual and procedural background of this case and, because this is a memorandum opinion, we do not provide a detailed description of the events leading to this appeal. We refer to the relevant background information in connection with each issue discussed.

**DISCUSSION**

Defendant raises two issues on appeal, arguing that the district court abused its discretion in (1) determining that the Victim was competent to testify at trial; and (2) allowing lay testimony regarding Victim's mild mental retardation but, at the same time, excluding testimony regarding another medical diagnosis. Additionally, the State has alerted us to a possible double jeopardy violation arising from Defendant's convictions for kidnaping and criminal sexual penetration. We address each of these issues in turn.

**1.    Competency Determination**

Defendant argues that the district court erroneously determined that Victim was competent to testify at trial. We review a trial court's determination regarding the competency of a witness for an abuse of discretion. *State v. Hueglin*, 2000-NMCA-106, ¶¶ 21-24, 130 N.M. 54, 16 P.3d 1113; *see Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 60, 134 N.M. 77, 73 P.3d 215.

Pursuant to Rule 11-601 NMRA, "[e]very person is competent to be a witness except as otherwise provided in these rules." In applying Rule 11-601, "the trial court's role is to insure that witnesses meet a minium standard regarding the matters on which they will testify, the minimum necessary to permit any reasonable person to put any credence in their testimony." *Hueglin*, 2000-NMCA-106, ¶ 22 (alterations omitted) (internal quotation marks omitted). In essence, the trial court ensures that witnesses meet a minium standard of competency, and the jury resolves questions of the weight and credibility of the testimony. *Id.* We apply a general presumption that all persons are competent to testify and "[o]rdinarily the party challenging competency bears the burden to show the witness is incompetent." *Apodaca*, 2003-NMCA-085, ¶ 62.

In order to deem a witness to be competent, the district court must determine that the witness has "a basic understanding of the difference between telling the truth

4

and lying, coupled with an awareness that lying is wrong and may result in some sort of punishment." *Hueglin*, 2000-NMCA-106, ¶ 24 (internal quotation marks omitted); *see State v. Macias*, 110 N.M. 246, 249, 794 P.2d 389, 392 (Ct. App. 1990) ("Competency means that the witness appreciates the duty to speak the truth and possesses the intelligence and the capacities to observe, recollect, and communicate.").

In the proceedings below, Defendant moved to exclude Victim as a witness on competency grounds, and the district court subsequently held a hearing in which Victim was sworn in and subjected to a voir dire examination by the judge in order to determine Victim's competency. In response to questions from the court, Victim testified regarding the difference between telling the truth and telling a lie, that the purpose of an oath was to tell the truth, that lying can result in punishment or being placed under arrest, and that lying results in punishment in other contexts. The court also posed wide-ranging questions concerning Victim's family life, schooling, and future plans in order to test Victim's ability to observe, recollect, and communicate. At the conclusion of the hearing, the district court made an oral ruling from the bench, finding that Victim met "the minimum standards of competence [and] that a reasonable person could put some credence in his testimony." The court further found that Victim understood the nature of an oath, the consequences of lying, and the requirement of telling the truth at trial.

On appeal, Defendant contends that the district court abused its discretion in making the above determination because: (1) Victim told the district court at the hearing that he did not have a good memory and could not recall the events at issue, (2) the questions asked at the hearing did not concern the events at issue, and (3) Defendant was denied the right to present expert testimony on the issue of Victim's competency.

We are not persuaded. Based on our review of the record and the transcript of the hearing, we conclude that the district court did not err in finding that Victim was competent to testify. Although Victim answered, "Not really, sir," when asked by the district court judge whether he had a good memory of the sexual assaults, he went on to state that he did remember some of the incidents at issue. He also testified that he understood the importance of telling the truth regarding the incidents, that he would tell the truth, and that if he did not know the answer to questions posed at trial regarding the incidents, he would say "I don't remember . . . [o]r I don't know." These responses, coupled with Victim's earlier answers regarding the meaning of an oath and the consequences of lying, were adequate to meet the minimum standard for competency, and the district court did not abuse its discretion in this regard. *See Hueglin*, 2000-NMCA-106, ¶¶ 23-24 (holding that there was no abuse of discretion where the trial court determined that the victim was competent to testify based in part

on the victim's testimony that "she understood that she could get in big trouble if she failed to tell the truth" and her promise to tell the truth (internal quotation marks omitted)).

As for Defendant's contention that the district court's voir dire examination did not concern the events at issue, we disagree for two reasons. First, there is no requirement under Rule 11-601 that the voir dire examination must focus solely on the factual circumstances of the case. Rather, we have previously emphasized that the district court can make a competency determination even without an evidentiary hearing and that "the judge making the [competency] determination has a good deal of discretion to determine how the examination should be conducted." *Macias*, 110 N.M. at 250, 794 P.2d at 393. Second, and more significantly, the transcript from the hearing does not substantiate Defendant's assertion that the voir dire examination did not address the events at issue. The district court judge specifically asked Victim questions at the hearing regarding Defendant and his interactions with Defendant. The court also asked Victim if he knew why he was in court that day, to which Victim responded, "Because [Defendant] sexually assaulted me." At this point, the court asked the questions discussed previously regarding Victim's memory of the "sexual assaults." We also note that the district court gave defense counsel an opportunity to submit voir dire questions during a recess in the jury room before the examination

7

commenced, and that defense counsel did not make any objections either during or after the examination concluded. Thus, the record provides no basis for Defendant's characterization on appeal of the district court's voir dire examination.

Finally, we are not persuaded by Defendant's assertion that he was denied the right to present expert testimony on the issue of Victim's competency. In *Macias*, we stated that "[a]lthough perhaps competency may be determined by means of a psychological evaluation by a qualified expert who is subject to cross-examination, ordinarily, competency should be determined by a voir dire examination [of the witness by the trial court judge]." 110 N.M. at 250, 794 P.2d at 393. Thus, it was not an abuse of discretion for the district court to make a competency determination based solely on Victim's testimony. As we have already discussed above, Victim's testimony formed a proper basis from which the court could conclude that he was competent to testify. To the extent Defendant argues that a defense expert could have addressed inconsistencies in statements made by Victim in pre-trial interviews or the impact of Victim's medical conditions on his testimony, we conclude that these were issues that spoke to Victim's credibility that fell within the purview of the jury. *See Apodaca*, 2003-NMCA-085, ¶ 67 (holding there that "[a]ny confusion [the witness] [may] have expressed in his recount of the events to the investigator, as well as his medicated state were issues of fact that went to credibility and not admissibility and

were properly before the jury"); *see also Hueglin*, 2000-NMCA-106, ¶ 22. Thus, based on the foregoing, we conclude that the district court made an adequate inquiry into Victim's competency and that it did not abuse its discretion in determining that Victim was competent to testify.

**2. Testimony Regarding Victim's Medical Conditions**

Defendant also challenges evidentiary rulings made by the district court concerning the admissibility of lay witness testimony on Victim's medical conditions. Although difficult to discern from his brief-in-chief, Defendant appears to raise two specific issues, arguing that: (1) the district court erroneously denied Defendant's request for a defense expert to testify regarding Victim's medical conditions; and (2) the district court improperly allowed prosecutors and certain lay witnesses to refer to Victim as "mildly mentally retarded" and to discuss other "medical diagnoses," but Defendant was not allowed to elicit lay witness testimony regarding "oppositional defiant disorder."

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Martinez*, 2008-NMSC-060, ¶ 10, 145 N.M. 220, 195 P.3d 1232. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks omitted).

Defendant first asserts that the district court erroneously denied his request for a defense medical expert at trial because an expert could have assisted the jury in its assessment of Victim's credibility. We are not persuaded. Defendant fails to provide record support showing that he requested an expert for trial, and our review of the record does not indicate that the district court entered such a ruling. *See State v. Garcia*, 2009-NMCA-107, ¶ 23, 147 N.M. 150, 217 P.3d 1048 (stating that we do not consider arguments if the defendant fails to cite record support); *see also* Rule 12-216(A) NMRA (stating that "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked"). With respect to a defense medical expert, the record only shows that at a pre-trial hearing to address Victim's competency, defense counsel stated that they had received funding approval for a medical expert who had already reviewed Victim's medical records. Although the district court ruled on Victim's *competency* without ordering a medical evaluation of Victim by this expert as requested by defense counsel, there is no indication that the district court disallowed Defendant from calling this expert at trial to address Victim's *credibility*. However, at trial, Defendant presented the testimony of only one witness, Victim's sister, and then rested without ever alerting the court to the possibility of a defense expert. As a result, because Defendant had a medical expert

who was allegedly available to him but for unknown reasons did not call this or any other expert witness at trial, we conclude that there was no abuse of discretion.

Turning to Defendant's second contention, we also hold that the district court did not abuse its discretion in allowing certain lay witness testimony that Victim was mildly mentally retarded. Victim's mother testified that Victim was "slightly mentally retarded," and the prosecutor referred to Victim as "mildly mentally retarded" throughout the trial. We agree with the State that some of the challenged testimony, such as the testimony from Victim's parents regarding his special needs and that he was enrolled in special education classes, were factual matters that fell within the witness' personal knowledge and were thus admissible under our evidentiary rules governing lay witness testimony. *See State v. Luna*, 92 N.M. 680, 684, 594 P.2d 340, 344 (Ct. App. 1979) (recognizing that lay witnesses may give opinion testimony concerning their own perceptions when they have first-hand knowledge and there is a rational connection between the observations made and the opinion formed). In addition, we also point out that Defendant himself referred to Victim's developmental delays, prior hospitalizations, and other medical conditions to support his argument that Victim was not credible. Thus, there was no abuse of discretion as Defendant had ample opportunity to observe and question Victim in order to assist the jury in assessing Victim's credibility and knowledge.

11

Even if we were to assume that the district court improperly allowed the State to refer to mild mental retardation, the error would be harmless. Harmless error for a non-constitutional violation occurs when "there is no reasonable probability the error affected the verdict." *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198 (emphasis omitted). Reviewing courts consider three factors when determining whether an error is harmless. "The factors are whether there is: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the State's testimony." *Id.* ¶ 56 (footnote omitted). "No one factor is determinative; rather, they are considered in conjunction with one another." *Id.* ¶ 55.

After careful examination of the record and consideration of the three factors identified in *Barr*, we determine that there is no reasonable probability that the improperly admitted evidence affected the verdict. Substantial evidence supports Defendant's convictions. Victim testified regarding the incident and his safe house interview was played for the jury. Victim's mother testified regarding what she observed when she walked into Victim's room on the date of the incident. The record also contains the testimony of a medical expert, who examined Victim following the

incident and testified that the exam results were consistent with sexual abuse. Even disregarding the testimony concerning Victim's mild mental retardation, we think that there was sufficient evidence to support Defendant's convictions. Moreover, Defendant did not present substantial evidence to discredit the State's case. Other than presenting the testimony of Victim's sister, who stated that she had no personal knowledge of the incident, Defendant did not present any other evidence to controvert the prosecution's case in chief. We conclude that there was no reasonable probability that the admission of testimony as to Victim's mild mental retardation affected the trial, and thus any error was harmless.

We are also unconvinced that the district court abused its discretion in disallowing Defendant from asking Victim's stepfather whether Victim had oppositional defiant disorder. The district court determined that a significant amount of testimony had already been admitted regarding Victim's behavior before and after the incident, and thus, there was no need to "label" it as oppositional defiant disorder. We hold that this ruling was well within the district court's discretion to exclude evidence.

**3. Double Jeopardy Violation**

We turn now to address the State's contention, raised in its answer brief, that Defendant's convictions for first degree kidnaping and CSP II violated his constitutional protections against double jeopardy. At the outset, we note that Defendant has not submitted any briefing to this Court to address the State's contention. Nevertheless, we consider whether Defendant's right to be free from double jeopardy was violated because he was convicted of both CSP II (commission of a felony) and kidnaping, the predicate felony underlying the CSP II conviction. We review double jeopardy claims de novo. *State v. Quick*, 2009-NMSC-015, ¶ 6, 146 N.M. 80, 206 P.3d 985.

The right to be free from double jeopardy "protects against both successive prosecutions and multiple punishments for the same offense" (internal quotation marks omitted). *State v. Armendariz*, 2006-NMCA-152, ¶ 5, 140 N.M. 712, 148 P.3d 798. In the present case, we are concerned with the latter, multiple punishments for the same offense, and specifically, what is categorized in our double jeopardy jurisprudence as a "double-description case, which prohibits charging a defendant with violations of multiple statutes for the same conduct in violation of the Legislature's intent." *State v. Montoya*, 2011-NMCA-____, ¶ 30, ___ N.M. ___, ___ P.2d ___ (No. 28,881, May 27, 2011) (alterations omitted) (internal quotation marks

14

omitted).  In such a case, we apply the two-part analysis set forth in *Swafford v. State* and its progeny:  (1) whether the conduct underlying the offenses is unitary and (2) if so, whether the Legislature intended for the unitary conduct to be punished as separate offenses. 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991).  Double jeopardy will bar a conviction "if the conduct underlying the two offenses is unitary and the Legislature has not indicated an intent to punish the same conduct separately." *See Montoya*, 2011-NMCA-___, ¶ 30 (alterations omitted) (internal quotation marks omitted).

**1.     Unitary Conduct**

Defendant's convictions for kidnaping and CSP II arose from an incident that occurred at Victim's home on August 17, 2005.  Accordingly, we begin our analysis by determining whether Defendant's conduct on that day could be viewed as one, single transaction.  We have previously applied the following analysis for unitary conduct:

> Conduct is not unitary if sufficient 'indicia of distinctness' separate the transaction into several acts. In making this determination, we evaluate separations in time and space as well as the quality and nature of the acts or the results involved.  Sufficient indicia of distinctness exist when one crime is completed before another, and also when the conviction is supported by at least two distinct acts or forces, one which completes the first crime and another which is used in conjunction with the subsequent crime.  The key consideration is whether the same force was used to commit both crimes.

*Montoya*, 2011-NMCA-____, ¶ 31 (internal quotation marks and citations omitted). We must ultimately decide "whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks omitted).

In the present case, Defendant's conviction for CSP II (commission of a felony) was based on digital penetration that occurred "during the commission of [k]idnap[]ing" and his conviction for kidnaping was based on Defendant having "restrained or confined" Victim with the intent to "hold [Victim] against [his] will to inflict death, physical injury or a sexual offense." As we recently reiterated in *Montoya*, "because some force or restraint is involved in every sexual penetration without consent, kidnaping cannot be charged out of every CSP without a showing of force or restraint separate from the CSP." 2011-NMCA-____, ¶ 38. Thus, we must determine whether the state based its theory of kidnaping on the same force used to commit CSP II; if so, the conduct is unitary.

Defendant's convictions for kidnaping and CSP II were based on the following conduct, as Victim testified at trial. Defendant, a friend of Victim's older brother, entered Victim's bedroom and closed the door. Victim tried to leave the room but Defendant was standing in front of the door. Defendant then ordered Victim to pull

16

down his pants and made a verbal threat to force his compliance. Victim pulled down his pants. Defendant then held Victim down on the bed as two penetrations and other sexual contact occurred before Victim's mom walked in, at which point Defendant rushed to the area of the bedroom closet.

We conclude that the conduct underlying Defendant's convictions for CSP II and kidnaping was unitary. There are no sufficient indicia of distinctness in the foregoing conduct from which the jury could find independent factual bases for its guilty verdict on the kidnaping and CSP II counts. Defendant's acts were not separated by time or space. There was no change in location nor was any evidence presented to substantiate an intervening struggle or event. *See State v. Pisio*, 119 N.M. 252, 261, 889 P.2d 860, 869 (Ct. App. 1994) (finding unitary conduct for kidnaping and CSP II (during the commission of kidnaping) where, during a five-minute period, the defendant closed and locked the door and then forced victim to perform oral sex in the apartment hallway); *see also Armendariz*, 2006-NMCA-152, ¶ 10 (finding unitary conduct where there was no change in location, the events occurred simultaneously, and there was no intervening struggle between the defendant and victim); *Swafford*, 112 N.M. at 15-16, 810 P.2d at 1235-36 (finding conduct constituting CSP II and assault was non-unitary where the victim was bound, struck several times, and verbally threatened for a period of time before the CSP occurred).

17

Moreover, there is no clear indication that the jury found distinct acts of force to support both the kidnaping and CSP II (commission of a felony) convictions. *Montoya*, 2011-NMCA-____, ¶ 37 (explaining that "unitary conduct occurs when the state bases its theory of kidnaping on the same force used to commit CSP II (commission of a felony) even though there were alternative ways to charge the crime"). It is unclear from the record whether the jury found that the kidnaping occurred by the initial confinement of Victim in the room through the closing of the door or by Defendant's subsequent restraint of Victim on the bed during the CSP. In fact, the State's theory of kidnaping, as presented in closing argument, was that both of these acts of force supported the kidnaping charge. *Id.* ¶ 39 (holding that the defendant's conduct was unitary where the record did not substantiate whether the kidnaping was accomplished by the confinement of the victim's vehicle with defendant's truck or by the defendant's restraint of victim inside her vehicle during the CSP); *see State v. Crain*, 1997-NMCA-101, ¶ 17, 124 N.M. 84, 946 P.2d 1095 (finding unitary conduct where the CSP II and the kidnaping charge involved the same use of force during a single act of sexual intercourse). Thus, we conclude that Defendant's conduct was unitary.

**2.     Legislative Intent**

Because we have concluded that the conduct underlying Defendant's convictions for CSP II and kidnaping was unitary, we must determine whether the Legislature intended multiple punishments for CSP II and kidnaping. The statutes at issue in this case do not expressly provide for multiple punishment. *See* NMSA 1978, § 30-4-1 (2003); NMSA 1978, § 30-9-11 (2003) (amended 2009). We therefore apply the *Blockburger* test and look at the elements of the statutes as presented in the jury instructions to determine whether the Legislature intended multiple punishments. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234; *see Montoya*, 2011-NMCA-____, ¶¶ 40-41.

Here, in order to convict Defendant of CSP II, the jury had to find that Defendant "caused the insertion, to any extent, of a finger into the anus of [Victim]" and that he committed this act "during the commission of [k]idnap[]ing" or, alternatively, through the use of "physical force or physical violence." In order to convict Defendant of kidnaping, the jury was required to find that Defendant "restrained or confined [Victim] by intimidation or deception" and that he "intended to hold [Victim] against [his] will to inflict death, physical injury or a sexual offense on [Victim]."

In comparing the two offenses, we conclude that all of the elements of kidnaping were subsumed within CSP II in this case because the conviction for CSP

II required proof of digital penetration that occurred during the commission of kidnaping. *See Montoya*, 2011-NMCA-____, ¶ 42 (holding that kidnaping was subsumed within CSP II (commission of a felony) when the conduct was unitary and an element of CSP II (commission of a felony) required that the sexual contact occur in the commission of kidnaping). Given the unitary conduct in this case, punishment for both kidnaping and CSP II fail the *Blockburger* test and violate Defendant's right to be free from double jeopardy. We therefore remand to the district court with instructions to vacate the conviction for the lesser offense. *Montoya*, 2011-NMCA-___, ¶ 43.

**CONCLUSION**

For the foregoing reasons, we remand to the district court with instructions to vacate Defendant's conviction for the lesser offense, either kidnaping or CSP II. We affirm on all other issues.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

20

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**TIMOTHY L. GARCIA, Judge**