This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37009**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**VICTOR DIMAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stanley Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Victor Dimas appeals from his convictions, following a jury trial of involuntary manslaughter, contrary to NMSA 1978, Section 30-2-3(B) (1994); false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963); tampering with evidence, contrary to NMSA 1978, Section 30-22-5(B)(2) (2003); and conspiracy to tamper with evidence, contrary to NMSA 1978, Section 30-28-2(B)(3) (1979) and Section 30-22-5(B)(2). Defendant's arguments on appeal attack his involuntary manslaughter and false

imprisonment convictions. Defendant argues that there was insufficient evidence for the involuntary manslaughter conviction, specifically claiming that the State failed to prove Defendant did not act in defense of another. Defendant also argues that double jeopardy barred conviction for both false imprisonment and involuntary manslaughter: first because the false imprisonment was incidental to the involuntary manslaughter, and second by applying a more traditional double jeopardy analysis. Unpersuaded, we affirm.

## BACKGROUND

{2}     Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth here only a brief overview of the historical facts of this case. We include discussion of specific facts where necessary to our analysis.

{3}     On October 14, 2015, Defendant and his girlfriend, Mariah Esquibel, spent the night at the trailer of Angela Trujillo. Trujillo, her teenaged son, her infant daughter, and a woman named Gabriela Garcia also stayed in the trailer. Victim Leroy Encinias had been at the trailer earlier, but did not spend the night.

{4}     The next morning, Trujillo was sleeping when she heard banging on the front door, followed by a window opening. Trujillo walked toward the living room and saw Victim coming through the window. Trujillo grabbed a stick that was used as a makeshift barricade for the front door and told Victim to get out. Victim was angry and was screaming and yelling. A forensic pathology expert testified that Victim had a high level of methamphetamine in his system.

{5}     Victim walked toward Trujillo, grabbed the stick from her hands, and beat her with it. Trujillo and Victim struggled, and Trujillo was thrown to the floor, where Victim continued to scream at her. Trujillo screamed for help.

{6}     Defendant was asleep when he heard Trujillo and Victim arguing, someone being hit, and Trujillo's teenaged son screaming for help. Defendant came out of the bedroom and saw Trujillo and Victim fighting. Defendant saw Trujillo on her back, on the floor, and Victim standing over her with a two by four in his hand, grabbing her hair and hitting her. Defendant thought that Victim would send Trujillo to the hospital or worse.

{7}     Defendant freed Trujillo from Victim by placing him in a chokehold from behind and instructed Victim to calm down. Victim was acting crazy, screaming, yelling, and fighting. Trujillo started to hit Victim in the face. Defendant and Victim fell to the floor.

{8}     Defendant asked Esquibel to retrieve handcuffs from the bedroom. Esquibel got the handcuffs, and Defendant put them on Victim. Esquibel then struck Victim three times in the face and Defendant told her to stop. Defendant said that Trujillo also struck Victim and Esquibel told her to stop, although Trujillo herself denied striking Victim. Defendant then released Victim from the chokehold. Both Defendant and Trujillo

described Victim as conscious, alive, and not bleeding when he was released from the chokehold. The chokehold lasted up to one minute. Defendant maintained that he told Trujillo that she should call the police; Trujillo denied that Defendant made this suggestion.

**{9}** Defendant and Esquibel left with some of their belongings, but returned after two and one-half hours to retrieve additional belongings. Trujillo told them Victim was dead. Defendant did not call the police. Defendant instead instructed his girlfriend to leave Trujillo's home in Victim's truck.

**{10}** When Victim's body was found, he was still handcuffed. As determined by an autopsy, Victim's death was caused by a combination of strangulation, blunt force trauma, and physical restraint. The methamphetamine played a minor role in his death.

## DISCUSSION

### I. Sufficiency of the Evidence

**{11}** On appeal, Defendant contends that there was insufficient evidence to support involuntary manslaughter because the State failed to prove that Defendant's restraint of Victim was not undertaken in defense of another. In reviewing the sufficiency of the evidence, "we determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime at issue." *State v. Brenn*, 2005-NMCA-121, ¶ 4, 138 N.M. 451, 121 P.3d 1050. We view the evidence "in the light most favorable to the verdict, resolving all conflicts, and indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary, to ensure that a rational jury could have found each element of the crime established beyond a reasonable doubt." *State v. Verdugo*, 2007-NMCA-095, ¶ 25, 142 N.M. 267, 164 P.3d 966.

**{12}** To convict Defendant of involuntary manslaughter, the State was required to prove beyond a reasonable doubt that: (1) "[D]efendant choked and/or restrained and/or struck [Victim]"; (2) "[D]efendant should have known of the danger involved by [D]efendant's actions"; (3) "[D]efendant acted with a willful disregard for the safety of others"; (4) "[D]efendant's act or acts caused the death of [Victim]"; (5) "[D]efendant did not act in defense of another"; and (6) this happened in New Mexico on or between October 15 and 17, 2015. *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."); *see also* UJI 14-231 NMRA. Further, the jury was instructed that:

> Evidence has been presented that [D]efendant killed [Victim] while defending another.

> The killing was in defense of another if:

1.     There was an appearance of immediate danger of death or great bodily harm to Angela Trujillo as the result of [Victim] striking and/or choking her with a piece of wood; and

2.     [D]efendant believed that Angela Trujillo was in immediate danger of death or great bodily harm from [Victim] and killed [Victim] to prevent the death or great bodily harm; and

3.     The apparent danger to Angela Trujillo would have caused a reasonable person in the same circumstance to act as [D]efendant did.

The burden is on the State to prove beyond a reasonable doubt that [D]efendant did not act in defense of another. If you have a reasonable doubt as to whether [D]efendant acted in defense of another, you must find [D]efendant not guilty.

*See* UJI 14-5172 NMRA.

**{13}**     We conclude that the State presented sufficient evidence to meet its burden to establish that Defendant did not act in defense of another. The killing was in defense of another if there was "an appearance of immediate danger of death or great bodily harm" to Angela Trujillo. *Id.* Furthermore, Defendant's actions must have been reasonable under the circumstances. *See id.* Here, sufficient evidence was presented for the jury to conclude that Defendant's actions were not reasonable. The State presented evidence that Defendant put Victim in a chokehold for up to one minute, and Victim died as a result of strangulation, blunt force trauma, and physical restraint. A doctor from the Office of the Medical Investigator (OMI) testified that Victim's thyroid cartilage was fractured and nearly every type of muscle in Victim's neck was hemorrhaged. The doctor further testified that both injuries were consistent with strangulation. On cross-examination, Defendant admitted that he was "squeezing pretty hard" when he choked Victim. This evidence is sufficient to allow a reasonable jury to conclude Defendant's actions were unreasonable under the circumstances.

**{14}**     Furthermore, the jury heard evidence that Trujillo did not appear injured following the incident. Trujillo's cousin testified that she gave Trujillo a ride on the date of the incident, following the incident, and did not see any injuries to Trujillo. A deputy also testified that, when he met with Trujillo when she was reporting a home invasion, he did not notice anything in particular about her physical condition. The jury reasonably could have concluded that while Victim and Trujillo were having some kind of physical disagreement, the lack of any injuries to Trujillo indicated that the incident did not support an appearance of *death* or *great bodily harm*.

**{15}**     We also note that jurors heard evidence that Defendant left the scene without calling the police and instructed his girlfriend to leave Trujillo's home in Victim's truck. It is possible that the jurors took these facts into account as evidence of consciousness of guilt when they concluded that Defendant did not act in defense of another. *See State v.*

*Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts."). Based on the facts articulated herein, we conclude that there is sufficient evidence to support a finding that Defendant did not act in defense of another.

## II.     Double Jeopardy

**{16}**     In addition to his argument that the evidence was insufficient because the restraint used was in defense of another, Defendant contends that the false imprisonment was incidental to the involuntary manslaughter, and that convicting Defendant of false imprisonment and involuntary manslaughter violated his right to be free from double jeopardy. In support of his argument, Defendant relies on *State v. Trujillo*, 2012-NMCA-112, ¶ 39, 289 P.3d 238, which held that the "Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime." We disagree with Defendant's contentions. *Trujillo* deals specifically and exclusively with the offense of kidnapping. Defendant has not persuaded us that under the circumstances here *Trujillo* should be extended to the offense of false imprisonment, and in any case, the false imprisonment was sufficiently separated in time and place from the involuntary manslaughter such that it was not incidental. *See id.* ¶¶ 34, 39.[1]

**{17}**     The Double Jeopardy Clause "has been held to incorporate a broad and general collection of protections against several conceptually separate kinds of harm: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Montoya*, 2013-NMSC-020, ¶ 23, 306 P.3d 426 (internal quotation marks and citation omitted). We apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. In the present matter, the relevant question is whether Defendant's conviction for false imprisonment and involuntary manslaughter constitutes multiple punishments for the same offense, i.e., whether Defendant's same conduct violated both statutes. For the double jeopardy prohibition against multiple punishments, there are two types of cases: (1) when a defendant is charged with violations of multiple statutes for the same conduct, referred to as "double description" cases; and (2) when a defendant is charged with multiple violations of the same statute based on a single course of conduct, referred to as "unit of prosecution" cases. *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. Defendant's arguments raise only a double description challenge.

**{18}**     For "double description" challenges, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223: we must determine (1) whether the conduct is unitary; and if it is, (2) whether the Legislature

---

[1]Defendant's reliance on *Trujillo* raises an issue that rests somewhere between double jeopardy and sufficiency. However, because the incidental analysis conducted in *Trujillo* bears striking resemblance to the unitary conduct analysis conducted for double jeopardy, and to the extent Defendant is raising both a sufficiency claim based on incidental conduct and a double jeopardy claim, we resolve both within our double jeopardy analysis.

intended to punish the offenses separately. "When determining whether [the d]efendant's conduct was unitary, we consider whether [the d]efendant's acts are separated by sufficient indicia of distinctness." *DeGraff*, 2006-NMSC-011, ¶ 27 (internal quotation marks and citation omitted). "Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616.

**{19}** Defendant argues that *Trujillo* should control this matter. We note that *Trujillo* applies strictly to the offense of kidnapping, *see* 2012-NMCA-112, ¶ 39, and has never been applied to false imprisonment. Defendant claims that "[b]oth the logical underpinnings of *Trujillo's* incidental-restraint limitation on kidnapping and the policy reasons behind it require extension of the limitation on kidnapping to false imprisonment as well." Defendant points out that the "only difference between kidnapping and false imprisonment is the mens rea—not the actus reus."

**{20}** In *Trujillo*, we specifically emphasized that we were analyzing whether the Legislature intended the defendant's conduct in that case to constitute kidnapping. *Id.* ¶ 42. Indeed, the approach this Court took in *Trujillo* was premised on the history of the kidnapping statutes and the serious nature of that offense. *Id.* ¶¶ 23-30. In *Trujillo*, we recognized that the foregoing considerations distinguish kidnapping from the lesser included offense of false imprisonment. *Id.* ¶¶ 26-27, 29-30, 41. In light of our analysis in *Trujillo*, we do not find Defendant's argument that we should apply *Trujillo* to false imprisonment persuasive. Regardless, for the reasons that follow in our double description analysis, we conclude that, under the factual landscape of the instant case, the restraint used to support the false imprisonment conviction was distinct from, and not merely incidental to, the restraint used to support the involuntary manslaughter conviction. Thus, even if *Trujillo* applied to false imprisonment, which we do not so hold today, *Trujillo* is inapposite to the facts at issue here.

**{21}** Proceeding now with our unitary conduct analysis, the jury was instructed to convict Defendant of false imprisonment if it found, in pertinent part, that he restrained or confined Victim against his will and he knew he had no such authority to do so. *See* UJI 14-401 NMRA. To convict Defendant of involuntary manslaughter, the jury was instructed that it must find, in pertinent part, that Defendant "choked and/or restrained and/or struck [Victim,]" should have known of the danger involved, and acted with willful disregard for the safety of others; Defendant's actions caused the death of Victim; and Defendant did not act in defense of another. UJI 14-231.

**{22}** Here, the State has consistently argued that Defendant's convictions do not violate double jeopardy because the restraint of the chokehold, supporting the conviction for involuntary manslaughter, was separate from the restraint of the handcuffs, supporting the conviction for false imprisonment. These acts were separated by sufficient indicia of distinctness for this Court to conclude that Defendant's conduct was not unitary. The object and result of both restraints was different. The initial chokehold, which was the strangulation that led, at least in part, to Defendant's death, was part of a physical struggle between Defendant and Victim. Separately, Defendant

used handcuffs, which prevented Victim from struggling any further or from defending himself against the blows from Defendant and/or the other participants. In fact, the handcuffs were still on Victim's body when he was found. Handcuffs allowed Defendant to restrain Victim indefinitely, whereas the object of the chokehold was to strangle Victim, which was a cause of Victim's death. The restraints occurred separately and distinctly. *See State v. Armendariz*, 2006-NMCA-152, ¶ 4, 140 N.M. 712, 148 P.3d 798 (explaining that, even in a de novo double jeopardy review, "[w]e indulge in all presumptions in favor of the verdict when reviewing the facts" (internal quotation marks and citation omitted)). Because discrete acts underlie the convictions, *see DeGraff*, 2006-NMSC-011, ¶ 27, and because the objects and results can be distinguished, *see Silvas*, 2015-NMSC-006, ¶ 10, the two restraints were not merely incidental to the false imprisonment and were therefore also not unitary.

**{23}** Because we conclude that the conduct supporting the false imprisonment conviction was not unitary with the conduct supporting the involuntary manslaughter, we need not consider whether the Legislature intended false imprisonment to be a separately punishable offense. *See id.* ¶ 9 ("Only if the first part of the test is answered in the affirmative, and the second in the negative, will the [D]ouble [J]eopardy [C]lause prohibit multiple punishment in the same trial." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{24}** For the foregoing reasons, we affirm.

**{25}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JENNIFER L. ATTREP, Judge**